MARSHALL v. THE ST. LOUIS, KANSAS CITY & NORTHERN RAILWAY COMPANY, *Appellant.*

1. **Action by Passenger for being Carried Beyond Station:** EXCESSIVE VERDICT. In an action against a railroad company for carrying a female passenger beyond her station, the circumstances were such that the plaintiff was only entitled to recover for the loss of time and expense incurred in being taken past her station and back, and the jury were so instructed. The evidence showed that she lost two or three hours' time and paid $1.50 for a returning conveyance. There was a verdict for $1,000, reduced by remittitur to $750, and judgment accordingly. *Held*, excessive, and judgment reversed.

2. ———: EXPRESS TRAIN NOT STOPPING AT WAY-STATION. A passenger buying a ticket to D. station on defendant's road, was told by the ticket agent to take a particular train. She did accordingly. The train proved to be an express, not allowed by the regulations of the company to stop at D., but she did not know this until informed of it by the conductor after the train had started. She told him of the direction the agent had given her, and insisted on being let off at D. He took up her ticket, but refused to stop at D., and took her to the next stopping place beyond. In an action against the company; *Held*, that the plaintiff ought to have counted on the negligent misdirection of the ticket agent, not on the refusal of the conductor to stop, for he could not have done otherwise.

*Appeal from Chariton Circuit Court.*—HON. G. D. BURGESS, Judge.

REVERSED.

*Wells H. Blodgett* for appellant.

*Samuel C. Majors, C. W. Bell* and *S. P. Houston* for respondent.

HOUGH, C. J.—The material portion of the petition in this case is as follows: That defendant, on or about the 11th day of October, 1878, for a reward, undertook and agreed to convey plaintiff safely from Kirksville, in Adair county, to Dalton, in Chariton county, but that wholly neglecting and disregarding its duty in that behalf, maliciously or wantonly and wrongfully refused to put plaintiff off at Dalton, but carried her on to Brunswick, and that by reason of said wrongful act of defendant she was damaged in the sum of $5,000, for which she prays judgment. The defendant in its answer denied each and every allegation contained in the petition.

The plaintiff testified as follows: "I reside at Newark, Knox county, Missouri. On October 11th, 1873, I bought from defendant's agent at Kirksville a ticket from Kirksville to Dalton. I asked the agent if he could sell me a through ticket to Dalton (I knew I would have to make a change at Moberly), and he said he could. He got the ticket and I paid him for it. I asked what time the train would go out; it was then after eight o'clock, and he said the train left ten minutes after nine. I asked him what time it would get to Moberly, and he told me. I said, how long will I have to wait there, and he said something over two hours. I then paid him for the ticket. I then asked him if I would have any trouble in making the change at Moberly, or in getting off at Dalton, and he said 'no, madam, none at all; the officers all along this road are gen-

tlemanly and accommodating.' I got on board the train and went to Moberly, and got off there a little after twelve, and went into the waiting room. I was not informed at Moberly that the train did not stop at Dalton. I sat quietly in the depot over two hours. They said the train was behind time. It was in the night, but the train finally came along, and I got on board. The first time the conductor came along after I got on at Moberly, I handed him my ticket, and he said: I cannot put you off at Dalton, we do not stop there. I said: What did they sell me a ticket for, then? He said he would take me on to Brunswick, but could not stop at Dalton. I insisted that he should stop there, and he said: No, madam, we cannot stop there. Shortly afterward he came through the car again and I called to him and told him the circumstances; that my daughter-in-law was very sick, and he said: No, madam, I cannot put you off, I have no more right to put you off there than I have to stop at any farm house on the road; I cannot do it. A lady spoke up and said: If she had no ticket you would put her off—which seemed to annoy him, and he walked off. He came in the third time, and I called to him, and said: I have not a particle of baggage, and it won't detain you three minutes. He said: I understand the matter perfectly and do not intend to stop. His manner was rude and abrupt. He did not use any insulting language but was abrupt and impatient. He took me on to Brunswick, and I did not say any more at all. I got out at Brunswick, and got a carriage as soon as I could and went out to Mr. Redman's. It was ten minutes after nine when I got there, and I found my daughter-in-law had just died. I did not explain to the agent at Kirksville the circumstances under which I was going, but did explain to the conductor. I bought the ticket from the agent in the depot. I walked up to the door where everybody bought tickets and he sold me the ticket for $3.25. At Brunswick I hired a conveyance to take me out to Mr. Redman's where my daughter-in-law was sick; that is three and a half miles

from Dalton and twelve and a half from Brunswick. I paid for the conveyance $1.50, and I got there ten or twelve minutes after nine. When the train passed Dalton it was not daylight, and the stars were shining when I got to Brunswick. The agent at Kirksville told me to get on the first passenger train. He told me to take the first train that came along after I got to Moberly, and that is why I took it.

*Cross-examination:* After I left Kirksville, the next conversation I had with the railroad officials was with the conductor after I left Moberly. The conductor said he could not put me off at Dalton. In the first conversation I had with the conductor he told me to go on to Brunswick. The conductor said he was near forty minutes behind time. He gave me the pass back from Brunswick to Dalton, but I objected. I said I do not want your pass, but he gave it to me. In the depot at Kirksville I did not see any notice posted up in regard to the running of trains. I cannot see to read very well after night, and I did not see anything of the kind. In the first conversation the conductor said Dalton was not on his bill to stop, and that is all he said at that time. In the next conversation he again said he could not stop. In the last conversation he said he was behind time, and he turned off in a rude and abrupt manner after the third conversation. He gave me the pass the first time. He said the train on which I would go back would reach Dalton after nine o'clock, and I said I cannot wait that long. The conductor on the train from Moberly to Dalton took up my ticket. He took it up when he first met me, and that is the time he gave me the pass, but I told him I did not want the pass, but that I wanted to stop at Dalton. In my last appeal I said, if you will slacken the speed of the cars, I will get off at the back of the car and risk the danger; and he said, I am not going to do it. This was in the third and last conversation, and his manner was rude and abrupt. I knew he was out of patience. I do not know that there was anything abrupt in the first

two conversations, but there was nothing like kindness, there was barely politeness. The agent at Kirksville told me to take the first passenger train going to Dalton; that conversation occurred at the time I purchased my ticket at Kirksville. The agent told me to take the first train going to Dalton. I cannot say that he said those words, but that was it to the best of my recollection. This was all the evidence offered by plaintiff in the case.

The conductor of the train which carried the plaintiff beyond her destination, testified that his train was an express train, running from St. Louis to Kansas City, and that there were twelve or fourteen stations at which he did not stop; that said train was known as number three, and was not allowed to stop at Dalton, and on the occasion referred to he had no authority to stop his train at Dalton. Trains number one and two stopped at Dalton regularly. On the morning in question his train was behind time and arrived at Brunswick fifteen or twenty minutes late.

The following stipulation was then made in open court between the attorneys for plaintiff and defendant, to-wit: "It is admitted by counsel for the plaintiff that train number three, on which plaintiff got on board at Moberly, was the through express from St. Louis to Kansas City, and that by the time table and schedule of running arrangements in force on defendant's railroad at said date it was not advertised to stop at Dalton, and that Dalton was not a stopping place for said train by said schedule."

At the instance of the plaintiff the court gave the following instructions:

1. If the jury believe from the evidence before them that plaintiff purchased of defendant's agent at Kirksville a ticket from Kirksville to Dalton, and that at the time she so purchased the ticket, defendant's agent directed her to take the 9:20 p. m. train for Moberly, and to get on the first passenger train going toward Dalton after she arrived at Moberly, and that she did so, and that the conductor took her ticket and refused to let her off at Dalton, but carried

her past to Brunswick, then they should find for plaintiff, unless they further believe from the evidence that before she got on the train at Moberly she knew that the train did not stop at Dalton.

2. If the jury find for the plaintiff they should assess the damages at a reasonable sum for loss of time and expense incurred in being taken from Dalton on to Brunswick, and from Brunswick back to Dalton, as they may believe from the evidence plaintiff is entitled to recover, not exceeding the sum of $5,000.

At the instance of the defendant the court gave the following instruction:

1. If the jury believe from the evidence that plaintiff purchased a ticket for a valuable consideration of defendant's agent, and defendant thereby undertook to convey plaintiff as a passenger in its cars from Kirksville to Dalton, and that defendant's servants failed to stop its train upon which plaintiff was lawfully a passenger for Dalton, at said station, but carried her on to Brunswick, then they are instructed that plaintiff's measure of damages is the sum the evidence shows plaintiff expended to enable her to return to Dalton, the value of the time lost, and the inconvenience she suffered thereby, but they must allow the plaintiff nothing for and on account of the mental anxiety or suffering endured by her on account of the sick or dying condition of her daughter, occasioned by such delay in reaching her destination.

The jury returned a verdict for plaintiff and assessed her damages at $1,000, of which the plaintiff remitted the sum of $250, and the court thereupon rendered judgment for the plaintiff for $750.

On the authority of the case of *Trigg v. St. Louis, K. C. & N. R'y Co.*, 74 Mo. 147, the judgment in this case

1. ACTION BY PASSEN- must be reversed, because the damages are
GER FOR BEING CAR-
RIED BEYOND STA- excessive. In the instruction given at the
TION: excessive
verdict. instance of the plaintiff, the jury were directed to assess the damages at such reasonable sum for

loss of time and expense incurred in being taken from Dalton on to Brunswick, and from Brunswick back to Dalton, as they might believe from the evidence plaintiff was entitled to recover. The action of the jury in returning a verdict for $1,000 on the testimony before them under this direction of the court, which was substantially repeated to them in the instruction given for the defendant, is such as to call for the interposition of this court. The verdict is without evidence to support it.

As the cause must be remanded, we think it proper to state that the petition should have counted on the negligent 2. ——: express mistake or misdirection of the agent at train not stopping at way-station. Kirksville, and not on the refusal of the conductor to stop the train at Dalton. The conductor was not guilty of negligence in refusing to stop his train at Dalton, for he was forbidden to do so by the rules of the company; and if he had stopped there in violation of his duty and the regulations of the company, and injury had resulted to any one from such violation of duty, the company would have been liable therefor. If the conductor of a through train, which by the regulations of the company is permitted to stop only at a few important stations on its transit, can be required to stop his train at any way-station on the statement of a passenger that he was informed by some agent of the company authorized to give such information, that the train would stop at such station and that he had been directed to take that train, the movement of such train would virtually be withdrawn from the control of the company, and placed under the control of the passengers, and in lieu of that precision, regularity and security which should be required in the management of passenger trains, only uncertainty, irregularity and insecurity would prevail. In many instances the conductor would have no means of testing the good faith of the representations made to him by the passenger, and he would have to act blindly, at the risk of injury to his master, and to the passengers committed to his care. When any servant of a

railroad company, having the requisite authority, misdirects a passenger to his injury, the company should be responsible therefor, but in an action for such injury, the petition should be founded upon such misdirection.

The judgment will be reversed and the cause remanded. The other judges concur, except RAY, J., who having been of counsel did not sit.