MICHAEL KELLETT, Respondent, v. CHICAGO & ALTON RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, May 24, 1886.

1. DAMAGES—WRONGFUL EJECTION FROM TRAIN—OBLIGATIONS OF CARRIER AND PASSENGER—CASE ADJUDGED.—In an action for damages on account of the wrongful ejection of plaintiff from one of defendant's trains, the evidence was thus: Plaintiff bought a ticket from defendant's agent at St. Louis, "good for one first-class passage from East St. Louis to station between punch marks," which station was Mount Leonard. On the back of the ticket was printed this condition: "This ticket is good only on trains that stop at the station named on it." He took a train which did not stop at Mount Leonard, but was allowed to travel on it to Marshall, a station east of Mount Leonard, and was told by the conductor that it would be

good from Marshall to Mount Leonard on the evening train, which stopped at the latter place. He entered defendant's evening train at Marshall, for Mount Leonard. The conductor of that train claimed it had been used, and demanded thirty-five cents, the fare from Marshall to Mount Leonard. Plaintiff refused to pay the fare and was, in consequence, ejected from the train, although refusing to leave and resisting the efforts made to remove him. *Held*, that plaintiff was entitled to a *continuous* passage from East St. Louis to Mount Leonard, not a passage divided into different parts; and the contract was an *entire* contract, and was indivisible. That plaintiff and defendant had the right to modify their contract, and did modify it, with the consent of defendant's conductor. That plaintiff did not violate his contract by stopping at Marshall, and, under his contract, had the right to ride from Marshall to Mount Leonard on the train which he entered at Marshall. There was no question of lay-over ticket in the case. That it was for the jury to say what condition the ticket was in when the last conductor received it from the plaintiff, and whether he could have told from it, in connection with the facts within his knowledge at the time, that it had not been used from Marshall to Mt. Leonard. That if the conductor acted in good faith, with no malice, and used only necessary force to eject him, *although mistaken as to his duty*, plaintiff was not entitled to vindictive damages.

2. ———— ———— OTHER CIRCUMSTANCES—PUNITORY DAMAGES—CASE ADJUDGED.—Although the evidence as to *ejection* might not warrant exemplary damages for *that act*, there are other facts and circumstances in evidence, *in this case*, which might, not unreasonably, warrant the jury in finding that the conductor's conduct in refusing the ticket and passage thereon to the plaintiff, was wanton and reckless, so as to justify punitory damages. *Per Philips, P. J.*, in separate opinion.

APPEAL from Saline Circuit Court, HON. JOHN P. STROTHER, Judge.

*Reversed and remanded.*

Statement of case by the court.

This is an action for damages on account of the wrongful ejection of plaintiff from one of defendant's trains.

About six o'clock, p. m., on August 24, 1883, the plaintiff purchased a ticket from defendant's ticket agent at St. Louis, "good for one first-class passage from

East St. Louis to station between punch marks," which station was Mount Leonard.    On the back of the ticket there was printed this condition :   " This ticket is good only on trains that stop at the station named   on  it." The plaintiff took the defendant's train which left St. Louis that same evening for Kansas City.    The conductor examined the plaintiff's ticket, punched it, and returned it to him.    Another conductor took charge of the train at Rood House, a station on defendant's railroad in Illinois.    From the uncontradicted evidence of plaintiff and his witness, McNealey, it appeared that the conductor went to where plaintiff and McNealey were sitting, soon after the train left Rood House.    The conductor took McNealey's ticket, examined it, and told him that the train did not stop at Mount Leonard, his ticket being for Mt. Leonard.    McNealey replied that he only wished to go to Marshall, and the conductor said "all right." The plaintiff then handed his ticket to the conductor and told him that if the train did not stop at Mt. Leonard he would, also, stop at Marshall, as he had some business there, but that he would want to go on to Mt. Leonard on the evening train of the next day.    The conductor handed the ticket back to the plaintiff, and said it would be good from Marshall to Mt. Leonard on the evening train, which stopped at the latter place.

The plaintiff got off the train at Marshall in the morning of August 25, 1883, and in the afternoon of that day he entered the defendant's "evening" train, at Marshall, for Mt. Leonard.    Mt. Leonard was a station west of Marshall.    Shackleford was a station between Marshall and Mt. Leonard.    After the train started from Marshall the plaintiff gave to the conductor his ticket, on which he had ridden as far as Marshall.    The conductor, after having examined the ticket, told plaintiff that it had been used, and that plaintiff would have to pay  thirty-five  cents,  the  fare to  Mt. Leonard.    The plaintiff refused to pay the fare, and was, in consequence, ejected from the train at Shackleford.    The

plaintiff refused to leave the train, and resisted the ef-forts made to remove him therefrom.

The plaintiff, himself, testified that no more force was used than was necessary to eject him. The plaintiff testified that the conductor "swore, and I think I swore some." There was no other or further evidence offered by plaintiff as to the conduct of the conductor in eject-ing him from the train. But the plaintiff did testify, "They did not hurt me, but hurt my feelings. I have lived an honest life, and felt mortified that I should be put off there in the presence of those people, as if I had been a dead beat."

The only witness for the defendant was the con-ductor, who ejected the plaintiff. His testimony in full was as follows :

"Live in Kansas City, and am in the employ of the railroad company ; am not now a conductor, but clerk in the office at Kansas City. In August, 1883, was a pas-senger conductor on the Chicago & Alton railroad. On the twenty-fifth day of August, 1883, I ran a passenger train from Rood House to Kansas City, over the defend-ant's road. After the train, that afternoon, left Mar-shall, I went through, taking up tickets and collecting fares. I came to plaintiff in one of the coaches. He had not been on the train before. When I came to him he handed me a ticket. When I examined it I found it was from East St. Louis to Mt. Leonard. From St. Louis to Kansas City there are two divisions ; the first from St. Louis to Rood House, the second from Rood House to Kansas City. One conductor takes the train over the first division, and another over the second. On examination of the ticket I found that it had been punched by the conductor of each of these divisions. Each conductor who handles a ticket is required, by the rules of the defendant, to punch them. The punches used by conductors make holes of different designs in the ticket. This ticket had two holes of different de-

signs punched in it, which showed that it had been used on both divisions."

Ticket was here shown witness, and identified as the ticket given him by plaintiff.

Witness continued to testify as follows:

"This is the ticket. I have had it in my possession most of the time ever since I received it from plaintiff. There has been no change in the ticket since I received it except the two punched holes in the margin, which I made.

"After I saw that the ticket had been used on both divisions of the road, I told plaintiff that he would have to pay fare from Marshall to Mt. Leonard, thirty-five cents. He said the ticket was his fare; that he had paid it once, and would not pay it again. I then went through the train, and after it had stopped at Shackleford I went to plaintiff and asked him if he would pay his fare. He said he would be d——d if he would; he had paid it once. I told him he would have to pay or get off the train. He said he would do neither; that if he got off he would have to be put off. I then took hold of his arm and collar and pulled him out of his seat, and to the door, and pushed him onto the platform. While pulling him out he pulled back. I did not abuse him or swear at him, nor talk loud to him. There was no writing, or anything else, on the ticket, which showed that plaintiff had the right to ride on the train from Marshall to Mt. Leonard, or that he had a right to stop, or that he did stop at Marshall.

"There were, then, two passenger trains run on defendant's road from St. Louis to Kansas City. One left St. Louis at 8:30, a. m., and one at about the same time in the evening. The train starting in the morning stopped at Mt. Leonard, the other did not. There was, also, an accommodation train, from Slater to Kansas City, which left Slater in the morning, and stopped at Mt. Leonard. It is the way freight.

"My instructions from defendant were, when pas-

sengers presented a ticket that showed it had been used, to take it up and collect fare ; and, in case a passenger refused to pay fare, I was instructed to put him off the train."

Cross-examination : "The train from St Louis which passed Marshall and Mt. Leonard, in the morning, did not stop at Mt. Leonard, and the next regular passenger train that did stop at Mt. Leonard was the evening train, of which I was conductor, and from which the plaintiff was put off. The plaintiff could not have gone to Mt. Leonard on any regular passenger train after he had gotten off the morning train at Marshall, before the evening train, of which I was conductor. I put two of the four punch marks on the ticket, to show the difference of the different punch marks."

" The morning train which next preceded the evening train, of which I was conductor, was the first train which left St. Louis after six, p. m., for Mt. Leonard. It left St. Louis at about 8:40, p. m., and arrived at Marshall the next morning, at about six o'clock. As that train did. not stop at Mt. Leonard, it would have been the conductor's duty to have given the plaintiff a stop-over ticket, which he could have used to go from Marshall to Mount Leonard."

The ticket was then read in evidence. It bore date August 24, 1883.

For the plaintiff, the court gave the following instructions :

"1. The jury are instructed that if the evidence shows that plaintiff purchased of defendant a ticket for passage on defendant's train from East St. Louis to Mt. Leonard, and that the train upon which plaintiff entered defendant's car did not stop at Mt. Leonard, and that the conductor on said train informed plaintiff that his said ticket was good from Marshall to Mt. Leonard, on another and different train, and returned him said ticket, and that plaintiff got off of said train at Marshall, and got on the other and different train spoken of

by said conductor, and he presented said ticket to the conductor of said other train, and that said conductor, from said ticket and the marks thereon, and other facts, shown by the evidence, could have ascertained that said ticket had not been used as far as to Mt. Leonard, then said ticket was good for his fare to Mt. Leonard, and the defendant had no right to put him off said train, and if, under such circumstances, plaintiff was put off said train by defendant's conductor, the finding must be for the plaintiff.''

''2.   The jury are instructed that the defendant acts through its agents and officers only, and that the conductor of defendant's passenger train had the right to inform plaintiff that his train did not stop at Mt. Leonard, and with the ticket read in evidence to arrange and provide in accordance with the regulations and instructions of defendant for plaintiff to ride to Mt. Leonard on a train that did stop there, and if the evidence shows that said conductor returned to plaintiff his said ticket, with the information that it was good from Marshall to Mt. Leonard, and that plaintiff got off said train at Marshall and got on another train that stopped regularly at Mt. Leonard, and presented his said ticket to the conductor of said second train, and that the said conductor, from the marks on said ticket, and facts within his knowledge, could have known, independently of the statement of plaintiff, that said ticket had not been used for a continuous passage from East St. Louis to Mt. Leonard, then said ticket was good for plaintiff's fare to Mt. Leonard, and if, with such knowledge, the defendant, by its agents, put plaintiff off of said train at Shackleford, by force, then the finding must be for plaintiff, and damages be awarded as set forth in other instructions.''

''3.   The jury are instructed that if the plaintiff had paid his fare and was upon said train of cars under the circumstances stated in the first instruction for plaintiff, then it was the duty of defendant to protect and

guard the rights of plaintiff, and carry him to the place to which he had paid fare."

"4.   If the jury believe from the evidence that the plaintiff was wrongfully put off of said train, as mentioned in other instructions, then the jury, in estimating the damages, may take into consideration the wounded feelings of plaintiff, the circumstances attending it, and the conduct of defendant's conductor, and if the same was rude, and insolent, award such damages as the circumstances may, in the judgment of the jury, require, not exceeding three thousand dollars."

The jury returned a verdict in favor of plaintiff for six hundred and fifty dollars.   The defendant has brought the case, on appeal, to this court.

MACFARLANE & TRIMBLE and SAMUEL DAVIS, for the appellant.

I.   The ticket only entitled plaintiff to one continuous passage between St. Louis and Mt. Leonard. *Walker v. Railroad*, 18 Cent. Law Journal, 394; *Railroad v. Bartrom*, 11 Ohio St. 457; *Deitrich v. Railroad*, 71 Pa. St. 432; *Stone v. Railroad*, 47 Iowa 82; *Hamilton v. Railroad*, 51 N. Y. 100.   It was the duty of plaintiff to ascertain the proper train, and the taking of a wrong train did not enlarge his rights under the ticket. *Logan v. Railroad*, 77 Mo. 664.   And he was wrongfully on the train, unless his original contract was modified so as to permit it.

II.   The contract could not be changed or modified, except by some agent of the company authorized to do so ; and there was no evidence that the conductor of the *first* train had authority to modify it, except by requiring passengers to procure a stop-over ticket. *Petrie v. Railroad*, 42 N. J. 449 ; *Logan v. Railroad*, 77 Mo. 665 ; *Hatten v. Railroad*, 13 Am. & Eng. Ry. Cases, 54 ; *Marshall v. Railroad*, 78 Mo. 616 ; *Hill v. Railroad*, 63 N. Y. 101.

III.   A railroad company has the right to make rea-

sonable rules and regulations for the running of its trains and the government of its employes. *Logan v. Railroad*, 77 Mo. 665 ; *Shelton v. Railroad*, 29 Ohio St. 214; *Townsend v. Railroad*, 56 N. Y. 295. Plaintiff gave the *second* conductor no evidence of right to passage except his own statement. The ticket showed it had been used—was canceled. If the passenger had any right to break up his journey it was on condition that he procure from the conductor a stop-over ticket. The *second* conductor could, therefore, look to nothing else. The rule is reasonable. *Brien v. Railroad*, 50 Texas 43 ; *Norton v. Railroad*, 54 Wis. 234.

IV. If plaintiff has a cause of action in this case, it is for the misdirection of the *first* conductor, and the damages could only be compensatory. *Marshall v. Railroad*, 78 Mo. 616 ; *Townsend v. Railroad*, 56 N. Y. 296 ; *Shelton v. Railroad*, 29 Ohio St. 214; *Yorton v. Railroad*, 62 Wis. 369.

V. The instructions for plaintiff were all erroneous and misleading—that as to the measure of damages, especially. For breach of the *contract* only *compensatory* damages could be recovered, while it contemplated damages upon the *tort* of the conductor.

VI. The demurrer to the evidence should have been sustained.

BOYD & SEBREE, for the respondent.

I. The demurrer to the evidence was properly refused. It was not offered until all the evidence on both sides was in, and the evidence, as a whole, tended to prove the allegations of the petition.

II. The motion in arrest of judgment was properly overruled. The petition states all the facts relative to the matters in controversy. And, even if it had been subject to demurrer, yet, as no demurrer was filed, any defect was cured by verdict. Sect. 3582, Rev. Stat. ; *Bowie v. Kansas City*, 51 Mo. 454.

III. The ticket entitled plaintiff to passage on a

train that *stopped* at Mt. Leonard, and only on such train. Defendant *accepted* it as good on a train not so stopping, and was *bound* to let plaintiff off of *that* train at Mt. Leonard, or convey him there by some other train acceptable to him, and he had the right to act on the statement of the conductor that his ticket would be good. *Sykes v. Railroad*, 11 Cent. Law Journal 337; *Hicks v. Railroad*, 68 Mo. 329; *Cosgrove v. Ogden*, 49 N. Y. 340; *Walker v. Railroad*, 18 Cent. Law Journal 394.

IV. Plaintiff had no knowledge of what was indicated by the punch marks on the ticket. Whether the damage was the result of his reliance on the statement of the *first* conductor, that the ticket was good, or the belief of the *second* conductor, that the ticket was cancelled, the damage was the same; the acts of both, as well as of each conductor, were the acts of defendant. *Murdock v. Railroad*, 19 Cent. Law Journal 171; *Yorton v. Railroad*, 62 Wis. 369; *Marshall v. Railroad*, 78 Mo. 616.

V. The jury were the judges of the weight of the evidence and credibility of witnesses, and by their verdict said that the *last* conductor knew, or could have known, that the ticket was good, at the time he put the plaintiff off the train. The verdict will not be disturbed by this court on that ground. *State v. Musick*, 71 Mo. 401; *State v. Warner*, 74 Mo. 83; *Grove v. Kansas City*, 75 Mo. 676; *Appleby v. Brock*, 76 Mo. 314; *Russell v. Berksluper*, 77 Mo. 417; *McAfee v. Ryan*, 11 Mo. 364. Defendant's instructions to its conductors *it chose not to introduce.*

VI. The instruction as to the measure of damages was correct, and the damages are not excessive. *Franz v. Hilderbrand*, 45 Mo. 121; *Maleck v. Railroad*, 57 Mo. 17; *Graham v. Railroad*, 66 Mo. 537; *Hicks v. Railroad*, 68 Mo. 335. The evidence shows that the defendant retains the conductor in its service, after full notice of all the facts and circumstances, and this is a ratifica-

tion of his acts, and renders defendant liable in *punitory* damages for his *tort*. *Bass v. Railroad*, 42 Wis. 655.

VII. The judgment was for the right party, and should not be disturbed.

HALL, J.—The plaintiff, by his contract with defendant, was entitled to one continuous passage from East St. Louis to Mt. Leonard. The passage was to be continuous, and not divided into different parts. The contract was an entire contract, and was indivisible. 2 Rorer on Railroads, 971, *et con seq.*, and the numerous cases cited in note one on page 972 ; *Walker v. Wabash Railroad Co.*, — Mo. App. ——. It was plaintiff's duty to ascertain the train upon which he could take passage in accordance with the terms of his contract. For any mistake made by the plaintiff, in selecting the train, he could have no remedy against the defendant, unless the mistake was caused by the defendant. *Logan v. Railroad*, 77 Mo. 679.

By the express terms of a condition printed upon the ticket, the plaintiff could take passage only upon trains stopping at Mt. Leonard. The plaintiff, by his own mistake, got upon the wrong train. By the terms of his contract, he had no right to ride a mile upon that train. The conductor had the right to eject the plaintiff from the train unless he paid his fare. But the conductor's right to do so was not because of any penalty imposed upon plaintiff for entering the wrong train. For his mistake, the plaintiff was subject to no penalty. On account of that mistake, he lost none of his rights under his contract. All those rights he still possessed, and he was still entitled to a passage to Mt. Leonard, in accordance with the terms of his contract. By his contract, he was not entitled to passage on the train which he had entered, and he, therefore, had no right to such passage unless he paid the regular fare.

Had the conductor ejected the plaintiff from the train when the plaintiff first presented his ticket, a short

distance from St. Louis, for the reason that his ticket did not entitle him to a passage upon the train ; or had the plaintiff, upon learning of that fact, paid the fare required by the conductor ; or had the plaintiff, upon learning the mistake made by him, voluntarily left the train, would any one contend that the entirety of the contract had been broken by the plaintiff, or that the plaintiff had thereby lost his right to a passage, under his contract, to Mt. Leonard ?   We think not.    For, in either case supposed, the plaintiff would not have entered at all upon the passage authorized by the contract. Such was equally the fact in this case at bar.

But the plaintiff and defendant had the right to modify their contract.    Although the plaintiff had no right, under his contract, to ride on the train which he entered at East St. Louis, he still had the right to ride in such train on his ticket, with the consent of defendant's conductor, in charge of said train.    That conductor ran as far as Rood House, and he had the right to take the plaintiff to Rood House on his ticket.    By so doing the conductor did not bind the defendant to carry the plaintiff in that train to Mt. Leonard, or beyond Rood House at all.    And, on the other hand, by accepting such passage, the plaintiff did not lose the right to a passage on his ticket to Mt. Leonard, in a train stopping at that station.    So far as concerns that right, upon the plaintiff's arrival at Rood House, it was just what it was when he left St. Louis.

The same may be said of the passage from Rood House to Marshall, with the second conductor.    When the plaintiff left the train at Marshall, he did not interrupt a continuous passage from St. Louis to Mt. Leonard. He had never entered upon such passage.    He, at St. Louis, entered, and, from there to Marshall, had ridden, in a train which could not stop at Mt. Leonard. And, besides, he cannot be said to have voluntarily left the train at Marshall, because he had to leave the train there or pay his fare to the first station beyond Mount

Leonard at which the train would stop.   *Logan v. Railroad Co., supra.*

The plaintiff did not, then, violate his contract by stopping at Marshall and there waiting for the right train, the train which he should have taken at St. Louis. By so doing, he violated no regulation of the defendant, so far as shown by the evidence.

The plaintiff, therefore, under his contract, had the right to ride from Marshall to Mt. Leonard on the train which he entered at Marshall.   But he had to present to the conductor of that train a ticket showing that his passage had been paid from Marshall to Mt. Leonard.   If the ticket presented by plaintiff had been used from Marshall to Mt. Leonard, it was, of course, worthless, and did not entitle plaintiff to a passage.

The only question in this case, so far as concerned the plaintiff's right to recover, was, whether the conductor of the last mentioned train could have told from the face of the ticket, in connection with the facts then within his personal knowledge, that the ticket had not been used from Marshall to Mt. Leonard.

The ticket bore date August 24, 1883.   The plaintiff testified that the first conductor punched the ticket, but did not say whether or not the second conductor also did so.   It was for the jury to say what condition the ticket was in when the conductor received it from the plaintiff. It was for them to say whether one or both of the preceding conductors had punched it.   They did not have to believe the statement of the last conductor that the ticket had been twice punched before he received it. And it was, also, for the jury to say whether, taking the ticket as it was when the last conductor received it, he could have told from it, in connection with the facts within his knowledge at the time, that it had not been used from Marshall to Mt. Leonard.   By his own knowledge is meant what he knew, and not what plaintiff may have told him, or anything which he, the conductor, might have afterwards learned.

There was no question of lay-over ticket in the case. The plaintiff did not need a lay-over ticket.

This action was brought for the recovery of damages, caused by the wrongful ejection of plaintiff. No recovery can be had for any wrong done to plaintiff by either of the preceding conductors, if such wrong there was.

If either of said conductors had taken plaintiff's ticket from him, that fact would not have entitled plaintiff to ride in the last conductor's train without a ticket. His ejection, in such case, unless he paid his fare, would have been rightful, and for the ejection he would have had no remedy against the defendant. And so, if either of the preceding conductors had so treated the ticket by punching it, or by other means, as to make it appear therefrom that it had been used from Marshall to Mount Leonard, and the last conductor, from the face of the ticket, and all the facts within his knowledge at the time, could not have known that it had not been so used, the plaintiff was entitled to ride on the ticket, he should have paid his fare, and, for refusing to do so, he was rightfully ejected from the train.    *Marshall v. Ry. Co.*, 78 Mo. 616 ; *Yorton v. Ry. Co.*, 54 Wis. 241 ; *Townsend v. Ry. Co.*, 56 N. Y. 295 ; *Shelton v. Ry. Co.*, 29 Ohio St. 214 ; *McClure v. Ry. Co.*, 34 Md. 532 ; 2 Rorer on Railroads, 972.

The case was not tried in accordance with the views herein expressed.    It may be that no harm was done to defendant by the second instruction given for plaintiff. On a new trial, however, it should not be given.    But, in the first instruction given for the plaintiff, the court erred in making the conductor bound at the time of the ejection by all the facts shown in evidence at the time of the trial.

As to the measure of damages, the fourth instruction given for plaintiff was erroneous.    If the conductor acted in good faith, with no malice toward plaintiff, and

used only such force as was necessary to eject him, although the conductor was mistaken as to his duty, the plaintiff was not entitled to vindictive damages. *Logan v. Ry. Co., supra.*

According to plaintiff's own testimony, no more force than was necessary was used to eject him. There was no evidence that the conductor's conduct was rude and insolent. Of course, wantonness or recklessness on the part of the conductor, in the ejection of plaintiff, would have been equivalent to bad faith or malice toward plaintiff.

The facts in evidence in this case would not have warranted the court in submitting to the jury the question as to whether or not the conductor acted toward the plaintiff with bad faith and malice.

The judgment is reversed and the cause is remanded. All concur.

PHILIPS, P. J., CONCURRING.—In concurring in reversing and remanding this cause, I deem it but due to counsel and the trial court to say what I understand we are all agreed on. While it is true there was no evidence, perhaps, to warrant the jury in inferring that the conductor was guilty of such rudeness or violence toward the plaintiff, in ejecting him from the cars, as would entitle him, on that account, to any exemplary damages, yet, as suggested in the opinion, there are other facts and circumstances in evidence which might not unreasonably warrant the jury in finding that the conductor's conduct, in refusing the ticket and passage thereon to the plaintiff, was wanton and reckless, so as to justify punitory damages. The ticket showed on its face that it had been issued by the company, the day before, at the city of St. Louis, some two hundred miles from the town of Marshall. As Marshall was an intermediate point between St. Louis and Mt. Leonard station, the conductor, in assuming that the ticket had been used over the intermediate space between Marshall and Mt.

Leonard, had to conclude that the passenger had, the evening before, passed up from St. Louis on this ticket, and that he had returned to Marshall, and was attempting to practice a fraud upon the company.

This was a presumption so violent as to indicate utter recklessness and want of common sense on the part of the conductor.    In the first place, he had to assume that the conductor, who was on the train the plaintiff had gone on to Mt. Leonard, had neglected his duty in not taking up the ticket before the passenger got off at Mt. Leonard.    In the second place, he had to assume that the plaintiff was acting fraudulently.    The very fact that the plaintiff was in possession of the ticket, at a point short of Leonard, was a persuasive fact indicating to the conductor that the ticket had not been used over the whole route, to say nothing of the plaintiff's assurances to him.    In relying upon a mere punch mark on the ticket, he saw fit to shut his eyes to every other reasonable presumption before him.

I have taken the trouble to add this, because I think it just to the lower courts and to counsel, to let them understand the whole view of the appellate court touching the case remanded, where it is to be re-tried on the very issues thus covered.

The jury, of course, are to determine the existence of malice, or wantonness, from all the facts and circumstances in evidence, without any special direction from the trial court indicating such facts and circumstances.