R. S. BARNETT, Respondent, v. CHICAGO & ALTON RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, May 10, 1898.

1. **Damages, Punitive:** NEGLIGENCE OF COMMON CARRIER. The mere act of negligence on the part of a common carrier of passengers in refusing plaintiff access to its cars does not entitle the plaintiff to punitive damages unless said acts are characterized by such circumstances as to make them wanton or malicious.

2. ———: ———: ———: MALICIOUS TORT. Where the bare facts attending the circumstances between plaintiff and defendant common carrier are insufficient in law to show a wanton or malicious tort, the right to claim punitive damages thus excluded can not arise upon the superadded disappointment and mental distress occasioned to plaintiff.

*Appeal from the Audrain Circuit Court.*—HON. E. M. HUGHES, Judge.

REVERSED AND REMANDED.

GEORGE ROBERTSON for appellant.

The ticket bought by plaintiff formed the contract between him and the defendant railroad company. It was not a mere voucher showing him entitled to a ride from point to point, but on account of a reduced

fare he made a special contract with the defendant, and the terms expressed on the ticket constitute the terms of that contract.  He did not become a passenger so far as this case is concerned; only made a contract which entitled him to become such.  The relation of passenger and carrier "can only be created by contract between the parties, express or implied."  Schepers v. R'y, 126 Mo. 672.  In the case at bar the contract is an express one.  Schaefer v. R'y, 128 Mo. 71.  The conditions of the ticket form the contract and both parties are bound by it.  Cherry v. R. R., 52 Mo. App. 499; Goetz v. R. R., 50 Mo. 472; Hutchinson on Carriers, secs. 568, 580, 580a, 580b; Lillis v. R. R., 64 Mo. 464; Edwards v. R. R., 81 Mich. 364; Cloud v. R. R., 14 Mo. App. 136.  The foregoing authorities are conclusive that the plaintiff had simply made a contract with the defendant to be carried to Farber and return under the conditions of the contract.  The court erred in allowing the plaintiff to introduce the telegram in evidence.  See page 15 of the transcript.  The telegram is not properly printed on page 15.  It should read:  "R. S. Barnett, Mexico, Mo.:  Your brother is very sick.  Come.  Tell mother.  (Signed) Mrs. Mary Barnett."  As will be observed, the come has been omitted from the transcript.  The purpose of plaintiff's going to Farber was wholly immaterial, because that would have varied the form of his contract, nor will it tend to introduce any element into the contract that he could recover damages on account of the disappointment of being delayed from a visit to his brother under the conditions.  Mental anguish, disconnected from personal injury for breach of a contract, can not be maintained at common law.  Connell v. W. U. T. Co., 116 Mo. 34.  The introduction of the telegram in the case was calculated to unduly excite the sympathy of the jury in favor of the plaintiff

and create a prejudice against the defendant. The defendant made the contract with the plaintiff. The contract is evidenced only by the conditions of the ticket, and the plaintiff is presumed to have read its terms and to have informed himself of its contents, and is thereby bound by it, and is estopped from saying that he was not acquainted with its terms. See R. R. v. Nicolai, 4 Ind. App. 119; 51 Am. St. Rep. 206. Admitting, for the sake of argument, that the defendant sold the plaintiff a ticket by which he was to be carried to Farber by either one of the night trains, then its failure to do so would be nothing but a breach of contract; and in the absence of any proof showing a pecuniary loss he would only be entitled to nominal damages. Breen v. Fairbanks & Co., 35 Mo. App. 212. "A party who breaks his contract is liable for the resulting damage without regard to the motive by which it was actuated, and in theory the damages in actions upon contract are not affected by the motive which induced the breach; there are some exceptions, but such is the general rule." 1 Sutherland on Damages [1 Ed.], p. 716. "The general rule is that exemplary damages will not be given for breach of contract and in actions for breach of contract the damages must be confined to actual damages only." Sutherland, *idem*, 716, 717, 159.

F. R. Jesse for respondent.

In Purcell v. Richmond & D. R. Co., 12 S. E. Rep. 954, the court holds: "A railroad company commits a tort, and becomes liable for punitive damages, in willfully failing to stop for passengers at a regular station." In R. R. v. Carr, 17 Atl. Rep. 1052 (71 Md. 135), the railroad company wrongfully refused to allow Carr to enter and ride on its train, and Carr brought an action in tort for the wrong. With

reference to the action the court said: "The contract, it is true, entitled the plaintiff to admission to the cars, and gave rise to the duty on the part of the defendant to allow such admission under proper circumstances; but in cases of the class to which this belongs the refusal or neglect to perform that duty, as well as the negligent performance of it, furnishes a ground of action in tort. In such cases both the nonfeasance and the misfeasance constitute a wrongful act, for which the remedy may be either by action on the contract or in tort, at the option of the party injured." The right to bring an action in tort in cases of this kind is also recognized in this state. Malecek v. R'y, 57 Mo. 17; Stoneseifer v. Sheble, 31 Mo. 243. The two cases, 126 Mo. 672, and 128 Mo. 71, cited by appellant on this point, do not contravene the authorities to which we have referred. The next question is, did defendant wrongfully refuse and fail to carry plaintiff from Mexico to Farber on either of its said two passenger trains that passed through those places on the night of the twenty-first of March, 1894? The defendant ran but two passenger trains through Mexico and Farber on that night, the first one reaching Mexico at about 11:30 P. M. of the twenty-first and the second one about 1:35 A. M. of the twenty-second. Opposing counsel contend that defendant was guilty of no such wrong, for the reason that the ticket was a round-trip ticket, for which he paid one dollar, ten cents less than he would have had to pay for passage from Mexico to Farber and return if he had only bought a ticket to Farber and at Farber bought a ticket to Mexico, the single fare between the two places being fifty-five cents, and for the further reason that the ticket provides that, "in consideration of the reduced rate at which this ticket is sold, the holder agrees to use this coupon on or one day after date stamped on the back thereof,"

VOL. 75 app—29

the said date being March 22, 1894, and for the further reason, defendant contends that Farber was not a stopping place of the second train to receive passengers. A railway passenger is not bound by the conditions in his ticket unless he has knowledge of such conditions when he purchases the ticket, and then he is presumed to assent unless he objects. Rawson v. R. R., 38 N. Y. 212; R'y v. Rodenbaugh, 38 Kan. 45; 5 Am. St. Rep. 715; R. R. v. Campbell, 36 Ohio St. 647; Davidson v. Graham, 2 Ohio St. 135; Jones v. Voorhees, 10 Ohio, 145; Brown v. R'y, 11 Cush. 97.

BOND, J.—The second count of the petition, upon which a recovery was had, alleges in substance, that on the twenty-first of March, 1894, plaintiff having received a telegram informing him of the illness of his brother, purchased a round trip ticket from Mexico to Farber, where his brother resided, between which points defendant was a common carrier of passengers; that he was refused passage upon this ticket on the next two trains of the defendant which carried passengers between the two stations noted on the ticket; that the conductors of said trains "rudely, insolently and maliciously" refused to allow him to enter either of said trains, though informed of the necessity for his journey to visit his sick brother, by which "rude, wanton and cruel treatment," plaintiff was delayed until 2 o'clock the next afternoon, at which time he took the train to Farber, and found his brother unconscious; that his brother PETITION. soon after died, whereupon judgment was prayed for $100 actual damages and $5,000 punitive damages. The defense was that the ticket in question was sold at a reduced price, and upon an agreement recited thereon, that it could only be used on the date stamped thereon or the following day; that

the two trains upon which plaintiff sought passage were through trains and did not stop at Farber; that plaintiff might have used the ticket upon the train on which he rode on the afternoon of the next day. The other allegations of the petition were denied. The reply took issue on the new matter. Plaintiff had a verdict and judgment for $2.50 actual damages and $300 punitive damages. Defendant appealed.

There was evidence tending to prove all the allegations in the petition, except the one relating to the manner of the refusal by defendant's servants to permit the plaintiff to take passage on the two trains which passed Mexico on the night he purchased his ticket. On this point the evidence of the plaintiff is, that after the purchase of a round-trip ticket from Mexico to Farber, about 9 o'clock in the evening of March 21, 1894, without any examination of its contents, he remained at the station until the arrival of one of defendant's passenger trains, between 11 and 12 o'clock of the same evening.

His evidence as to what occurred thereafter, is to wit:

"Q. What did you then do with reference to getting on that train, if anything? A. I told the conductor I wanted to get on the train to go to Farber; and he asked me where I wanted to go, and I told him, and he said I could not get on that train. Q. Did you show him your ticket? A. Yes, I did. Q. What did he say? A. He said I could not get on that train. Q. Did he examine the conditions of the ticket? A. No, he did not examine it at all. I took out the ticket and showed it to him, and told him I had bought a ticket from the agent to go, and he said I could not get on that train. Then I told him the reason I wanted to go, and he said I could not go under any circumstances. Q. What reason did

<span style="float:left">EVIDENCE.</span>

you give him for wanting to go? A. I said I had got a telegram that my brother was about to die, and he said I could not go under any circumstances; that it mattered not what was going on. Q. What next did you do? A. I waited for the next train. Q. What time did that arrive? A. Along about 1 o'clock—an hour or so apart. Q. Of the next day? A. No, that night. Q. After 12 o'clock? A. Yes, it was after 12 o'clock. Q. It was on the 22nd? A. Yes, sir. Q. Was that a passenger or a freight? A. A passenger train. Q. What did you do with reference to getting on that train, if anything? A. I done just about the same thing that I done on the first train. I presented my ticket and told them that I wanted to go to Farber, that I had my ticket; and he said that he would not take me. Q. You did not go on that train? A. No sir; no, I did not get on any of them. They would not let me go. Q. Both of these trains to which you have referred were passenger trains running along the line of the defendant company? A. Yes, sir. Q. Through Mexico to Farber? A. Yes, sir. Q. After you were refused admission to either of said passenger trains what did you next do? A. I waited until 2 o'clock the next day. Q. You waited to go until 2 o'clock the next day? A. Yes, sir. Q. Then what did you do? A. I went down on a passenger train running through the next day at 2 o'clock. Q. You went down the next day? A. Yes, sir. Q. What did you do with reference to paying your fare on that train? A. I paid the money. Q. You paid the money? A. Yes, sir. Q. You did not ride on this ticket which you purchased the evening before? A. No, sir. Q. What did you pay—how much did it cost you—what was your fare? A. I think it was fifty-five cents, I believe. Q. What time, about what time did you arrive in Farber the afternoon of the next day?

A. Somewhere after 2 o'clock; 2:20 or 2:30, I do not know exactly. Q. About how far is Farber from Mexico? A. About twenty miles, I guess. Twenty or twenty-five."

The conductors of the two trains upon which plaintiff was refused passage admit that fact, and state the reason to have been that the trains in question were through trains and did not stop at the town of Farber. Accepting the theory of the above transaction as presented by plaintiff's evidence and giving it the widest latitude compatible with reasonable deduction, we are still unable to preceive any logical basis for the application to it of the rule governing punitive damages. These can not be awarded, unless a wrong has has been committed, which was also wanton or malicious. Granting that defendant (under plaintiff's testimony) committed a breach of duty in refusing him access to its cars, was this mere act of negligence characterized by such circumstances as to make it wanton and malicious, as well as unlawful? For if it did not have both of these qualities it could not warrant the allowance of punitive damages. State v. Jungling, 116 Mo. loc. cit. 165; Lewis v. Jannoupoule, 70 Mo. App. 329; Berlin v. Thompson, 61 Mo. App. 241. According to plaintiff's own testimony all he met with when he applied for passage, was a bare refusal. He does not testify that this was couched in terms of rudeness, insolence and maliciousness, as charged in his petition. All that happened was his statement that he held a ticket to Farber—a way station of defendant's road, whither he wished to go to visit his sick brother, and the reply of the two conductors that he could not go on their respective trains. They accepted, without examination, his representation as to the point to which he held a ticket, and he accepted their refusal to receive

*Punitive damages.*

him as a passenger to that point. No attempt was made by him to enter either of the trains, nor was he subjected to any physical force or restraint.

The painful purpose of his journey gave him no higher right to embark on the cars than he would have had if his object had been a pleasure trip. Neither can the distress and disappointment, occasioned by the frustration of his trip, be considered as changing the nature of the acts of the two conductors in declining to accept the ticket held by him for passage on the trains under their charge. The bare facts attending the transaction between them and the plaintiff being insufficient in law to show a wanton or malicious tort, the right to claim punitive damages thus excluded could not arise upon the superadded disappointment and mental distress occasioned to plaintiff. Newman v. Western Union Tel. Co., 54 Mo. App. 434; Connell v. Western Union Tel. Co., 116 Mo. 34; Trigg v. R'y, 74 Mo. 147; Marshall v. R'y, 78 Mo. 610. Our conclusion is that the verdict and judgment for punitive damages was unsustained by the evidence in this record. The judgment is therefore reversed and the cause remanded. All concur. Judge BIGGS in result.