B. R. ALLEN *v.* CHICAGO, ROCK ISLAND & PACIFIC RAIL-
ROAD COMPANY.

(*Jackson.*   April Term, 1916.)

**CARRIERS.**   Carriage of passengers.   Passenger without ticket.
Ejection.

Though a carrier can require a passenger to purchase a ticket be-
fore entering the train where it gives reasonable opportunity
to do so and may enforce the rule by refusing to permit any·
one to enter a passenger train without a ticket, one who has in
good faith openly entered a passenger car in the usual man-
ner, and who offers to pay his fare, cannot be ejected because
he has no ticket.

· Cases cited and approved: Railroad Co. v. Garrett, 76 Tenn., 433;
McCook v. Northup, 65 Ark., 225; Railway v. Hammett, 98·
Ark., 418; Ford v. E. Louisiana R. Co., 110 La., 414; Lane v.
Railroad, 73 Tenn., 124.

Cases cited and distinguished: St. Louis, etc., R. Co. v. Kilpatrick,
67 Ark., 47; St. Louis, etc., R. Co. v. Blythe, 94 Ark., 153.

FROM SHELBY·

Appeal from the Circuit Court of Shelby County to
the Court of Civil Appeals, and by *certiorari* to the
Court of Civil Appeals from the Supreme Court.—BEN
L. CAPELL, Judge.

W. B. HARRIS, for plaintiff.

WRIGHT, MILES, WARING & WALKER, for defendant.

Mr. Justice Williams delivered the opinion of the Court.

Allen, who is a traveling salesman, brought this suit against the railway company to recover damages for his wrongful ejection from a passenger train by the conductor.

The trial judge in effect gave peremptory instructions in favor of the company to the jury on points vital to plaintiff's right of recovery; the jury accordingly rendered a verdict for the railway company, and the rulings were sustained by the court of civil appeals.

Allen was at Widener, Ark., in the pursuit of his business as a traveling salesman; and he desired to leave that place for Round Point, another station on the defendant company's line of railway about five miles distant, on a train that passed Widener about ten-thirty a. m. The train was about ten minutes late; and Allen was at the store of a merchant about seventy-five feet from the station when the train whistled for the station. He went at once to the depot, reaching there just before the train pulled up, but found that the agent who sold tickets was out of his office and on the platform attending to the loading and unloading of baggage and express matter. The village had a population of about two hundred, and the duties of attending to ticket sales and the handling of baggage and express devolved on the station agent.

Allen approached the agent, then at the express car of the train, and told the agent that he desired to purchase a ticket. The agent replied that he would sell

him one so soon as the handling of the express matter was finished; and, after finishing, he went to the office and procured a ticket, but before he could get out to deliver it to Allen the train started off. Allen boarded it, went into the coach assigned to the colored passengers, and through it to the one occupied by white passengers. There he met the conductor, and was asked for his ticket. Allen responded that he had none, but that he had the cash with which to pay the fare, which he proposed to do. The conductor declined to receive the cash and told Allen that the latter could not ride without a ticket. He then stopped the train, and let Allen off the car in the presence of numerous passengers; Allen protesting against the treatment.

Allen, it is found, had an abundance of time to purchase a ticket before the train reached Widener; but he did not have time to do so after he reached the depot because the agent was thus engaged with outside duties.

Allen, in order to reach Round Point, walked the distance at about noon in August.

The railway company had a rule, posted at the depot, requiring passengers to purchase tickets before entering trains. The case was made to turn in the court of civil appeals on the violation by Allen of this rule.

Appellee company contends that Allen's expulsion from the train was thereby justified, and it relies on the following language from 2 Hutchinson on Carriers (3d Ed.), section 1032:

"It is undoubtedly competent for a railroad company as a means of protection against imposition and

to facilitate the transaction of its business to require
passengers to procure tickets before entering the car,
and where this requirement is duly made known, and
reasonable opportunities are afforded for complying
with it, it may be enforced, either by expulsion from
the train, regardless of the tender of the fare in money,
or as will be seen in the following section, by requiring
the payment of a larger fare upon the train than that
for which the ticket might have been procured.''

The doctrine thus broadly laid down by the editor of
the later edition is not supported by the weight of au-
thority.    Indeed, it seems that, in the first edition of
this leading work on the law of carriers, a different
opinion was expressed by the author, as follows:

''If, however, in disregard or ignorance of such reg-
ulation (that passengers shall procure tickets as a con-
dition of the right to enter the cars) one who desired
to be carried without any fraudulent intent to impose
upon the carrier, should obtain entrance into a car,
he could not be treated as a trespasser, and would be
entitled to the rights of a passenger; and, not being
there with any dishonest or unlawful purpose, if ready
and willing to pay the price of his carriage when de-
manded, he could not be ejected for his previous non-
compliance with the regulation, but might demand his
carriage to his intended destination upon an offer to
pay according to the carrier's rates.    However reason-
able such a condition might be as a regulation for the
convenience of the carrier, a failure to comply with it
before the inception of the journey could not be con-

sidered as a reasonable ground for ejecting the passenger after it had commenced.''

· The language thus used by Mr. Hutchinson, who was a Tennessee lawyer, was approved by this court in *Railroad Co.* v. *Garrett,* 8 Lea (76 Tenn.), 438, 41 Am. Rep., 640.

Later adjudications support this rule, in respect of those who have entered a passenger train; and the decisions of the supreme court of Arkansas appear to be peculiarly pertinent on the point, and announce what we conceive to be the sounder rules governing in the situation.

*St. Louis, etc., R. Co.* v. *Kilpatrick,* 67 Ark, 47, 54 S. W., 971, involved the expulsion of such a nonticket holder from a passenger train after it had been put in motion, he being able and ready to pay cash fare on demand. The company had a placarded rule: ''Trainmen must examine tickets before allowing passengers to enter cars.'' The court said that:

One ''who enters over the steps of a passageway to a car where passengers ride, and through an entrance, unobstructed, which passengers may freely use—we say, one who embarks upon a passenger train under such circumstances is a passenger, although he may not have . . . entered at a place where a porter or brakeman was stationed to inspect tickets.''

See, also, *McCook* v. *Northup,* 65 Ark., 225, 45 S. W., 547.

The above decision was noted for distinction in *St. Louis, etc., R. Co.* v. *Blythe,* 94 Ark., 153, 126 S. W.,

386, 29 L. R. A. (N. S.), 299, and followed in *Railway* v. *Hammett,* 98 Ark., 418, 136 S. W., 191.

In *Ford* v. *East Louisiana R. Co.,* 110 La., 414, 34 South., 585, it was held, after one enters the train, the fact that he has no ticket furnishes no excuse for putting him off, and that the demand upon him must be either for a ticket, or for the payment of the cash fare, and, if he offers to pay, the railway company ejects him at its peril.

These holdings are not in disregard of another sound principle: That a railway company has the right by rule, duly published, to require those offering for passage to purchase tickets and exhibit them before entering the cars of the company. One offering to enter without such a ticket may be turned back.

Such a rule is without doubt a reasonable one, but it is also one that must be reasonably administered. It is with the administration of the rule that the above cases deal, and the gist of them is that, as applied to passenger trains, it is unreasonable to eject from a moving train one who in good faith and without stealth or trick has passed into a car and is then willing, able, and offering to pay the demandable cash fare. The place to turn him back is at the car steps or entrance, and if, by reason of the company's failure to have its employee at such place to supervise the traffic, the offerer thus enters one of the cars, it is not reasonable that he should be ejected, at least after the train starts. 4 R. C. L., p. 1108.

A different rule in this particular situation has been enforced in cases involving offerers for passage on freight trains, in this State (*Lane* v. *East Tenn., etc., R. Co.,* 5 Lea [73 Tenn.], 124); and elsewhere. See cases collected by the annotator of *St. Louis, etc.,* v. *Blythe,* 29 L. R. A. (N. S.), 300, where it is said:

"So, the cases having to do with the carriage of passengers upon freight trains go further than those dealing with passenger trains, and hold that, if a person gets on a freight train without the required token, he may be expelled although he is willing to pay a cash fare."

The distinction is not fanciful or without substance. The acceptance of passengers on freight trains is a matter of choice on the part of the railway company; not so as to passenger trains. Those offering themselves for passage on freight trains are not so numerous, and usually they are so few as not to justify the company in keeping employees at hand to so watch the inflow of passengers.

So far as the court of civil appeals justified the charge of the trial judge in announcing a contrary rule to that approved above, there was error. Writ of *certiorari* granted, and the judgment modified accordingly; the cause being remanded for a new trial in the circuit court.