## St. L., I. M. and S. Ry. v. Atchison.

1. RAILROADS: *Trains cannot stop at forbidden stations.*
   The taking up of a passenger's ticket to a station at which the train is forbidden to stop by the regulations of the company, does not make it the duty of the conductor to stop the train there.

2. SAME: *Same.*
   It is the duty of a passenger to inquire before embarking on a train whether it will stop at the station of his destination; and if he does so, and is misled by an agent authorized to speak for the company, he has his action against the company for the misdirections, but not for the refusal of the conductor to stop there if it be a station at which the train is forbidden to stop by the regulations of the company.

APPEAL from *Lafayette* Circuit Court.
Hon. O. D. SCOTT, Special Judge.

*Dodge & Johnson* for Appellant.

There are three patent facts apparent in this evidence, which we think conclusive of the case.

1.   That the train passed Emmett without slacking its speed, and was running at the rate of ten or twelve miles an hour.

2.   That the conductor gave no orders, used no threats or compulsion to plaintiff, or any of the passengers, to risk their lives in jumping from the train.

3.   That the jumping from the train was wholly voluntary on plaintiff's part, rather than to be carried past his home, and thus by his own wilful and voluntary act he assumed the risks incident to the leap, and took all the risks liable to occur while the train was running at this obviously dangerous rate of speed.

We submit, that it may have been ever so negligent in the conductor of the train to refuse to slow up or stop his train at Emmett, but the accident to plaintiff did not occur by reason of his negligence.

The proximate cause of the injury was the voluntary act of plaintiff in jumping from the train at the rate of speed at which it was at the time running.

The only thing that can take this case out of the rule that contributory negligence on the part of plaintiff is a bar to the action, is, that either the conductor commanded and ordered plaintiff to jump off, or that the acts of the conductor in charge of the train were such as to lead plaintiff to believe that it was safer to jump than to remain on the train and go by his home. Now do the facts show this?

But, suppose the conductor did tell plaintiff to jump, and that the train was running at an obviously dangerous rate of speed, was he compelled by this to do so? It will not do to plead any such excuse as this, for it is a rule of law, that where one is ordered to do an act, which it is apparent is in its nature

dangerous, and he does it and is injured, the fact that another ordered it or advised it, without using any compelling force, or compulsion, or threats, will not justify the injured party in doing the act, and he cannot, therefore, throw the blame upon another.

But such is not this case. There were no orders given to plaintiff by the conductor, to jump from the train, no threats, insults or violence were offered plaintiff by this appellant's servants, and there was nothing on earth to justify him in carelessly and with recklessness taking this leap at the rate of speed at which this train was running. That he was not killed is a wonder. That he was so slightly injured, was a streak of marvelous good fortune.

Where the risk or danger of alighting from a moving train is not apparent to a passenger, and he is urged to take the hazard by the company's employe whose duty it is to know the danger, his conduct will not be regarded as negligent. Where the danger is obvious, but slight, he has the right to rely upon the judgment of the conductor, whose duty and experience, he may presume, give a superior knowledge of such matters, and so justify an act which would otherwise be negligent. The case of *St. Louis, Iron Mountain & Southern Railroad v. Cantrell, 37 Ark.*, and *Memphis & Little Rock Railroad v. Stringfellow, 44 Ib., 322*, are illustrations of this in our own reports. *Files v. N. Y. Cent. R. R., 49 N. Y., 47*, was a case of a passenger attempting to alight while the train was in motion, in obedience to instructions of a brakeman. In disposing of the case the court says: "That it was culpable negligence on the part of the defendant to induce or permit the plaintiff to leave the train while in motion, and a gross disregard of duty not to stop the train entirely and give her ample time to pass off with her luggage, is not disputed; notwithstanding this, if the plaintiff did not exercise ordinary care, and might, with ordinary care and prudence, have avoided the injury, she is precluded from recov-

ering." See *St. L., I. M. & S. Ry. v. Rosenberry, 45 Ark., 256; 66 N. C., 494; 23 Penn. St., 147; 30 Ohio St., 222; 95 U. S., 439; 68 Mo., 593; 13 Pet., 181.*

COCKRILL, C. J. The main features of this case are similar to those of Rosenberry's case, reported in *45 Ark., 256.* The appellee boarded a through freight train at Prescott to be transported to Emmett. Emmett was not one of the usual stopping places for the train and it made no halt there on the trip in question, but the appellee alighted nevertheless, and in doing so injured his toe and received a shock which prevented him from engaging in active out-of-door labor for a few weeks. He sued the company to recover damages for the personal injury, and a jury awarded him $5000. His contention was that the conductor had compelled him to leave the train while it was in motion.

Rosenberry was the appellee's fellow passenger and took the leap with him, but the facts in the two cases are not identical.

The points of difference are that the appellee in this case testified that the station agent at Prescott advised him to board the freight train, suggesting that it would stop on that trip at Emmett; and there was more evidence of overbearing conduct on the part of the conductor toward this appellee than toward Rosenberry. While there is a little evidence to the contrary, it seems apparent that the appellee leaped from the train under a preconceived intention to do so rather than from any fear of the conductor. But it is not necessary to weigh the evidence to determine whether the verdict should be sustained. The judgment must, in any event, be reversed for misdirection of the jury. For the guidance of the court in another trial it is sufficient to advert simply to what is said in the Rosenberry case about the advice or command or compulsion of the conductor, excusing or not excusing the conduct of a passenger

St. L., I. M. & S: Ry. v, Atchison.

in exposing his person to obvious danger. The charge of the court in this respect is less obnoxious than in the Rosenberry case. But the court in this case charged the jury as follows as to the duty of the railroad to stop its train at Emmett to let the appellee off.

1. RAILROAD: Train can't stop at forbidden stations.      "If you find from the preponderance of the testimony that the conductor of the train upon which plaintiff was traveling took up his ticket for Emmett, then it became the duty of said conductor to stop said train at Emmett so as to enable plaintiff to get off said train, notwithstanding any regulation or custom of the company to the contrary. The acceptance of a ticket by the company's conductor makes a contract for the carriage of the passenger to the station named on said ticket, and the company cannot excuse themselves for any wilful, wanton or malicious acts of the conductor toward such passenger, by any rule or regulation as to the running of their through freight trains."

The refusal of the trial court to give the converse of this instruction, in so far as it relates to the company's obligation to stop at the passenger's destination, was held to be reversible error by the supreme court of Illinois, in a case closely analogous to this. See *C. & A. R. R. Co. v. Randolph, 53 Ill., 510.* In that case, as in this, the appellee purchased a ticket of the station agent and boarded a through freight train headed to his destination. The conductor took up his ticket, and refused to stop the train at his station, but upon arrival there, and when the train from an up grade was not going at full speed, told him then was his time to get off. The appellee leaped, was injured, and sued the company. The trial court refused to instruct the jury that the taking of the plaintiff's ticket by the conductor did not constitute a contract binding upon the company to stop the train at the point of destination mentioned in the ticket; but on appeal it was ruled that the jury should have been instructed as asked. We reached a similar conclusion as

St. L., I. M. & S. Ry. v. Atchison.

to the company's duty in regard to this same train in Rosenberry's case.

Railroad companies sometimes run trains that stop only at 2. SAME. principal stations on their roads, and the propriety of so regulating their business cannot be challenged, when they furnish a reasonable number of other trains which stop regularly at intermediate stations to accommodate the traveling public. It is the duty of a passenger to ascertain whether the station of his destination is one of the stopping places of the train he wishes to board before embarking, and if he attempts to do so and is misled by an agent whose employment authorizes him to speak for the company, he has his action against the company for the misdirection; but such misdirection does not alter the duty of the conductor. He must run his train according to the regulations of the company; otherwise in lieu of that precision and regularity which are required in the management of trains to insure safety, we should have only uncertainty, irregularity and insecurity. The station agent cannot thus legally throw upon the conductor the blind hazard of injury to his master and the passengers committed to his care. *Marshall v. St. L., K. C. & N. Ry., 78 Mo., 610.*

But in this case the mistake of the station agent, if there was a mistake, was not communicated to the conductor at all. The jury were told, however, that it was the company's duty to stop for the accommodation of the appellee, and the instruction was in all likelihood understood to mean that a failure to do so was "wanton, wilful and malicious conduct," on the part of the company, which, as they were told in another part of the charge, would warrant the infliction of punitory damages. How far this error went toward making up the verdict we are unable to determine.

Let the judgment be reversed and the case remanded for a new trial.