Rock Island, Arkansas & Louisiana Railroad Company *v.* Stevens.

Opinion delivered November 25, 1907.

1. Carrier—notice of passenger's destination.—The fact that a passenger purchased a ticket from a station agent entitling her to be carried to a flag station is not notice to the conductor of a train that she desired to debark at that station. (Page 439.)

2. Same—duty of passenger to notify conductor as to destination.— While ordinarily passengers may rely upon the conductor or some trainman ascertaining her destination in time to stop for her at a flag station, yet, where she sees that the train is crowded and the conductor is necessarily detained elsewhere, or where the distance is so short, or there are other indications that the conductor or other person in charge of the train would not obtain notice in time to stop the train, she must give him notice, or she can not complain if she is carried beyond her destination. (Page 440.)

Appeal from Union Circuit Court; *Jesse B. Moore,* Special Judge; reversed.

STATEMENT BY THE COURT.

Mrs. Stevens, then of Grayson County, Texas, on the 24th of December, 1905, was at El Dorado, and there purchased a ticket over the line of the appellant railroad company to Smith's Crossing. Her mother lived about three-quarters of a mile therefrom, and her brother was to meet her there, and he sent his conveyance there for her. Smith's Crossing is a flag station,

trains only stopping there to take on or discharge passengers on signal or notice. There was no depot, not even a platform there. It was six miles from El Dorado.

Mrs. Stevens knew it was a flag station, and not a regular station. She expected the conductor would come to her before they reached the station, and then she intended to tell him to put her off there. She was in the rear end of the rear coach of the train, and the coach was crowded. She did not observe whether the other coaches were crowded or not. The train was made up of three coaches and a baggage car.

She says that the train did not stop between El Dorado and Smith's Crossing, but slowed up at one place (the conductor says it made a stop there). There is one station between El Dorado and Smith's Crossing which is called Cargile. This station is one mile from Smith's Crossing. Mrs. Stevens expected the conductor to come through the cars there. When the train passed Cargile without her seeing the conductor, she sent her little boy to look for the conductor to notify him she wanted to get off at Smith's Crossing. She sent him twice, and a little later she started to hunt the conductor herself.

Mrs. Stevens's son, fourteen years of age, testified that after they passed Cargile his mother sent him to the next coach to find the conductor. Failing to find the conductor in the next coach, he returned to his mother, who again sent him forward to hunt him. He found him in the coach for negro passengers and delivered the message, and the conductor told him that there was no such place as Smith's Crossing. The train was either at Smith's Crossing or past it when he found the conductor.

In the meantime a gentleman, seeing Mrs. Stevens's predicament, went forward and found the conductor, and he said he would be back in a few minutes, and did then come back. When the boy failed to find the conductor, Mrs. Stevens started to look for him, and as she went forward she saw him standing in the door of the next coach, and she waited for him, and by the time he got to her the train had stopped at Upland, three and a half miles beyond Smith's Crossing. All of this seems to have occurred while the train was running from Cargile to Upland.

The conductor testified that Smith's crossing was a flag station six miles from El Dorado, and that it takes a train on

the regular schedule nineteen minutes to run from El Dorado to Smith's Crossing. That on that day in question he had a heavy load, the coaches were crowded, and people were standing in the aisles. He also had several negroes in the baggage car, who did not have room in the coach. Cargile is five miles south of El Dorado, and is a regular stop. The train stopped there probably thirty seconds or longer to put off mail and to receive mail.

In working the train, he commenced at the front end, and when he got through next to the last coach he met a party who told him there was a lady who wanted to get off at Smith's Crossing. He did not recollect the boy approaching him, and says he did not tell any one that there was no such place as Smith's Crossing. When he got back to the lady, the train was then at the depot at Upland, and he went to her and tried to make arrangements to have her conveyed back to Smith's Crossing. He also offered to make other arrangements to minimize her inconvenience; but these matters are immaterial in the view the court takes of the case.

The question was asked the conductor: "Tell the jury what the custom of the country is in the operation of passenger trains with regard to stopping at a flag station to let passengers off—is it ever done without special notice upon the part of the party desiring to alight from the train to that effect?" Objection was made to it, and the court said: "My ruling is this: If she bought a ticket and took the train, the company had notice that she wanted to get off at Smith's Crossing." Pursuant to this view of the law, all testimony contrary thereto was ruled out.

The conductor said that in the course of his duties it was not possible on that day for him to have reached Mrs. Stevens in time for him to have taken up her ticket before reaching Smith's Crossing. "There is not a conductor on earth, in commencing at the front end of the train, who could have done it." He said further that there was no such custom as a conductor passing through the train before taking up tickets in order to notify people of the arrival of the train at a flag station.

The court: "It is the duty of the conductor to find out where his passengers desire to get off his train. I have frequently seen them come through the train coming out of St. Louis and find

out if there were any passengers for nearby stations."

This is the substance of the testimony that is important in determining the appeal. The action was brought by Mrs. Stevens for being carried by her station and for damages sustained in walking back from Upland to Smith's Crossing. Judgment was recovered in the court below, and the railroad company has appealed.

*Buzbee & Hicks,* for appellant.

The court erred in excluding testimony offered by appellant to show that it was not the rule or custom of the company to stop its trains at flag stations except upon notice from the passenger that he desired to stop at such a station and in holding, in effect, that purchasing a ticket and boarding the train was notice to appellant that she wanted to alight the station in question. And, again, the court erred in holding that it was the duty of the conductor to go through the train and find out where the passengers wanted to get off. It is the duty of a passenger to ascertain whether or not a particular train stops at the desired destination, and, if it be a flag station, to notify employes in charge of the train, in time to make the stop. 45 Ark. 256; 47 Ark. 77; 4 Elliott on Railroads, § 1593. See also 67 Ark. 142; *Id.* 112.

*Marsh & Flenniken,* for appellee.

When a common carrier takes a passenger beyond his station, it is liable for all damages proximately resulting from its failure to allow the passenger to alight at proper station. 67 Ark. 125. Purchasing a ticket and boarding the train is sufficient notice to the carrier of the passenger's destination. There is no prejudicial error. The evidence sustains the verdict, and on the whole case the judgment is right. The verdict should stand, though error appear in the record. 18 Ark. 469; 26 Ark. 373; 24 Ark. 587; 24 Ark. 326; 44 Ark. 556; 19 Ark. 677; 46 Ark. 296; 46 Ark. 542.

HILL, C. J., (after stating the facts.) 1. The court said: "If she bought a ticket and took that train, the company had notice that she wanted to get off at Smith's Crossing." Pursuant to this theory, the court instructed the jury and excluded testimony offered.

In *St. Louis, I. M. & S. Ry. Co.* v. *Atchison*, 47 Ark. 74, where a station agent had sold a ticket to a passenger to a given station and told him that a train then about to leave would stop there, when in fact, according to the rules of the company, it did not, Chief Justice Cockrill, for the court, said: "It is the duty of a passenger to ascertain whether the station of his destination is one of the stopping places of the train he wishes to board before embarking, and if he attempts to do so and is misled by an agent whose employment authorizes him to speak for the company, he has his action against the company for his misdirection; but such misdirection does not alter the duty of the conductor. He must run his train according to the regulations of the company; otherwise, in lieu of that precision and regularity which are required in the management of trains to insure safety, we should have only uncertainty, irregularity and insecurity. The station agent cannot thus legally throw upon the conductor the blind hazard of injury to his master and the passengers committed to his care."

Therefore it follows that the purchase of the ticket alone was not notice to the company that that particular train would be stopped at Smith's Crossing.

2. The court said: "It is the duty of the conductor to find out where his passengers desire to get off his train," and instructed the jury according to the above theory. In *Pence* v. *Louisville & N. R. Co.*, 64 S. W. 905, the Court of Appeals of Kentucky, in a case practically identical with the one at bar, said: "A railroad company has the right to make reasonable rules and regulations for the conduct of its business, and to designate the stations where it will receive passengers and discharge them only upon notice; and it is the duty of the holder of the ticket to a flag station, where the trains stop only on notice to the conductor, to inform him of her destination; and if such passenger fails to notify the conductor or some employee of the company of her destination, and should be carried, as in this case, seven-eighths of a mile beyond the station before giving such notice, and the conductor then offered to carry her on to the next station, which was only a mile and a half away, and send her back, and such passenger voluntarily alighted from the train, and suffered no serious inconvenience therefrom, we are of the

opinion that no cause of action is made out." And the court indicated that it was following the rule of *Gulf, C. & S. F. Ry. Co.* v. *Ryan*, 18 S. W. 866, a case similar to this, in which the Court of Appeal of Texas said:

"It was the duty of the plaintiff to have notified the officers of the train that he desired to stop at Davidson Switch, and thereby prevent being carried beyond the station. This he did not do, and the evidence fails to show the want of due diligence on the part of appellant or its employees."

In *Chattanooga, R. & C. Rd. Co.* v. *Lyon*, 89 Ga. 16, the court said: "The holder of the ticket has, ordinarily, the right to assume, when he buys it, that the company will safely land him at his destination. Accordingly, he has the right to presume the conductor will call for his ticket before reaching the station specified, and thus obtain notice of the fact that he desires to stop at such station. Of course, when the conductor takes up and examines the ticket, the information will be thus conveyed to him that he has a passenger for this station, and there will be no difficulty at all in his carrying out the contract which has been made between the company and the passenger. * * * The general rule, therefore, as to the duties of railroad companies toward passengers holding tickets for flag stations should be as we have stated; but, as already intimated, we do not think this rule should be inflexible. There may be circumstances under which a passenger for a flag station is carried beyond his destination when it would not be fair or just to attribute the fact to the company's negligence. * * * There may be other occasions when the conductor will be prevented, without fault on his part, from ascertaining in time the desire of a passenger to stop at a flag station, or when, under the circumstances, it is manifestly the duty of the passenger to see to it that the conductor has the necessary information. In cases of doubt as to which should take the initiative, the question may very properly be left to the jury."

In *Central of Ga. Ry. Co.* v. *Dorsey*, 106 Ga. 826, the court said: "We think it is the duty of the conductor of a passenger train, when the company has sold tickets to passengers, to go through the train and ascertain the station at which the passengers wish to alight; but we also think that in a case like the pres-

ent there is a corresponding duty upon the part of a passenger, when he sees that the conductor has failed to call for and take up his ticket, and is ignorant of his presence on the train and of his destination, to notify the conductor of his presence and destination, especially where the ride is a short one, and the passenger knows that the train will not stop at this station unless the conductor has notice that there is on board a passenger for that station."

Applying these principles to the case at bar, Mrs. Stevens was making a ride of six miles to a station which she knew to be a flag station, and at which she knew the train would not stop unless she notified the conductor. She seated herself in the rear of the rear coach, and knew that the coach was crowded. She did not see the conductor, and made no effort to see him until the train reached Cargile, after a ride of five miles, and when she only had one mile to go. She then made efforts to reach the conductor, who was busy with a crowded train and had not reached the rear coach; and he was not notified that she desired to get off at this station until it was passed. As indicated in the authorities quoted, ordinarily passengers may rely upon the conductor or some employee of the train ascertaining her destination in ample time to stop for her when that station is a flag station. But when she sees, as in this case, that the train is crowded, and the conductor is necessarily detained with his duties elsewhere, or where the distance is so short that he could not reasonably be expected to reach her before arriving at her station, or other indications that the conductor or other person in charge of the train would not obtain notice in time to stop the train at the desired point, then the passenger cannot longer wait for the agent of the company to take the initiative, but she must give him notice that she desires to leave the train at such flag station in time to have it stop there, or else she cannot complain if she is carried by it.

The court proceeded upon two erroneous theories, which ran throughout the trial, and which necessarily call for a reversal and for a new trial.

Reversed and remanded.

McCULLOCH, J., (dissenting.)   I dissent from the rule announced in this case that plaintiff can not recover because she failed, under the circumstances described, to notify the conductor of her desire to get off at Smith's Crossing.   I think that it was the duty of the conductor to ascertain whether or not he had passengers for that place, or to give passengers reasonable opportunity to notify him of that fact.   He knew, of course, that the rules of the company permitted the sale of tickets for that station, and he was therefore apprised of the fact that passengers for that station might be on board the train.   When he found that he could not, in the regular course of his trip through the train collecting fares, go through the entire train   before reaching the flag station, he could have passed through each coach and inquired for passengers for the station, and, failing to do this, he ought to have stopped the train.   In other words, he ought to have given passengers for that station a reasonable opportunity to notify him of their presence on the train or to have stopped the train at the station.   The initial duty was upon him, and not upon the passenger.   It seems to me too onerous a duty to put upon a passenger—especially a woman—to require her to go through a moving train, from coach to coach, for the purpose of notifying the conductor of the place of destination.   Passengers are expected to remain in their seats, or at least in the coach to which they are assigned, and not to move about from coach to coach.   Of course, if the plaintiff had failed, after reasonable opportunity given, to notify the conductor of her destination, then she would have been guilty of contributory negligence, and she could not recover.   But no such question is presented in this case.   It is admitted that the conductor never went into the coach occupied by plaintiff until after the train passed Smith's Crossing.   Therefore she could not, without disregarding her own safety, have sought out the conductor to give notice of her destination.

I think the learned judge who tried the case below had the correct idea of the law concerning the duty of the carrier and so expressed it to the jury in his instructions.   Of course, the remarks inadvertently made concerning the custom of railroads in regard to stopping trains at suburban stations was improper;

but it does not appear that any prejudice could have resulted to appellant from the remark. It is undisputed that the plaintiff was carried by her destination, and that the conductor gave her no reasonable opportunity to notify him of her destination. This made out a case of negligence on the part of the company. The judgment should, in my opinion, be affirmed.