ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY *v.* BLYTHE.

Opinion delivered March 7, 1910.

CARRIERS—RULE REQUIRING PURCHASE OF TICKETS.—Railroad companies may require passengers to purchase tickets before entering the cars; provided this requirement is duly made known and reasonable opportunities are afforded for complying with it.

Appeal from Crittenden Cricuit Court; *Frank Smith,* Judge; reversed.

### STATEMENT BY THE COURT.

Alice Blythe and A. K. Blythe instituted separate suits in the Crittenden Circuit Court against the St. Louis & San Francisco Railroad Company to recover damages for their alleged ejection from one of its passenger trains.

By consent of parties, the cases were ordered consolidated and were tried together. The defendant has appealed to this court from the judgment rendered against it.

The facts necessary to a determination of the issues involved, briefly stated, are as follows: On or about October 1, 1908, A. K. Blythe and Alice Blythe, his wife, went to the station of appellant at Big Creek, Ark., for the purpose of taking passage on one of its passenger trains. The ticket agent was also baggage agent, express agent and mail clerk. Appellees wished to go from Big Creek to Marked Tree. Big Creek is a junction where the main line of appellant's railroad is intersected by its branch line to St. Louis. A large number of passenger trains arrive and depart from this junction daily. Appellees testified that they applied at a reasonable time at the

ticket office in the station to purchase tickets, and that the agent was not there to serve them. They then started to get on the train without tickets. The brakeman demanded their tickets. They explained to him that they were unable to procure tickets because there was no one in the ticket office to sell them. They offered to pay their fares to the brakeman before entering the car. The brakeman informed them that they could not enter without tickets. They again informed him why they had not procured tickets, and the brakeman again told them they could not enter the car without tickets. Mrs. Blythe was on the second step, and the brakeman jerked her back, and said: "You can't go without a ticket," and knocked her back against her husband. They remained in Big Creek from that time, about 5:30 o'clock P. M. to 9 o'clock, P. M., when they took another train for home.

On behalf of appellant, the brakeman testified that he did not use any violence or rough language toward appellees. He said that he told the parties that a rule of the company required passengers to have tickets before entering the cars, and that it was his duty to enforce the rule.

The ticket agent testified that he was in his office before the departure of the train for the purpose of selling tickets, and that he did sell tickets to other persons for passage on the train in question. He also testified that the railroad company had a rule in force at that time requiring passengers to purchase tickets before boarding the train, and that notices to that effect were posted around the station. He stated the rule had been in force for about two months.

*W. F. Evans* and *W. J. Orr,* for appellant.

1.  The relation of passenger and carrier is contractual, and before it is established there must be both an offer and acceptance as passenger. This relation, therefore, did not exist at the time appellees presented themselves at the entrance leading to the coach and were told that the rules of the company required them to provide themselves with tickets before they would be allowed to board the cars. 46 So. 776; 60 S. E. 1079; 84 N. E. 464; *Id.* 844; 105 S. W. 124; Moore on Carriers, 545, § 4; 43 So. 98. The statute, Kirby's Dig., § 6613, plainly refers to actual passengers, and has no application in a case where

parties intend to become passengers. See also 39 S. W. 358; 67 Ark. 53; 58 S. E. 491; 104 S. W. 280.

2.   A railway company has the right to make a rule requiring persons who intend to become passengers to purchase tickets before entering its trains; and if one who has notice of such rule, and is afforded reasonable opportunity to purchase a ticket, offers to enter a train without purchasing a ticket, he is not a passenger, nor entitled to be treated as such. 65 Ark. 225; 70 Ark. 114; 26 Am. & Eng. Ry. Cases, 234; 13 *Id.* 49; 3 *Id.* 340.

*J. F. Gautney,* for appellee.

1.   The contention that one who, being ready, able and willing to pay his fare, offers himself as a passenger, does not become a passenger until he is accepted as such by the carrier, has been held to be the law in some States; but in this State the statute fixes a different rule. Kirby's Dig., § § 6592, 6593, 6591, 6613. The relation of passenger and carrier did exist, when appellees presented themselves at the entrance of appellant's passenger coach, ready and willing to pay their fare. 67 Ark. 47, 52-4.

2.   The rule requiring all persons to purchase tickets before entering appellant's trains is in contravention of § 6592, Kirby's Digest. But, even if it should be held to be a reasonable rule, notwithstanding the statutes, no reasonable opportunity was afforded in this case to procure tickets.

HART, J., (after stating the facts).   Counsel for appellant rely for a reversal upon the action of the court in refusing to give to the jury the following instruction:

"No. 2.   The defendant railroad company had the right to establish a rule requiring passengers to purchase tickets before entering trains.   If the jury finds that it had established such a rule, and that the passengers were afforded a reasonable opportunity to purchase tickets before the departure of the train on which they wished to take passage, and did not do so, and the brakeman refused politely to allow the passengers to enter for the reason that they had not procured tickets, the jury will find for the defendant."

It is undoubtedly competent for a railroad company, as a means of protection against imposition and to facilitate the transaction of its business, to require passengers to procure tick-

est before entering the car, and where this requirement is duly made known and reasonable opportunities are afforded for complying with it, it may be enforced, either by expulsion from the train regardless of a tender of the fare in money, or, as will be seen in the following section, by requiring the payment of a larger fare upon the train than that for which the ticket might have been procured. 2 Hutchinson on Carriers (3 ed.), § 1032, and cases cited. See also 6 Cyc. 547.

Such rules are reasonable because they not only facilitate the orderly and convenient conduct by the railroad company of its own business. but promote the safety and comfort of its passengers. That railroad companies, unless prohibited by statute. may make and enforce such regulations, provided they also afford to those desiring to become passengers reasonable opportunity to purchase tickets, is not denied by counsel for appellees; but they contend that, under our statutes, the railroad may not enforce such rules by refusing a person without a ticket the right to enter one of its passenger trains for the purpose of transportation. To sustain their position, they rely upon the case of *St. Louis & San Francisco Railroad Co.* v. *Kilpatrick.* 67 Ark. 47, in which section 6613 of Kirby's Digest was construed. It reads as follows:

"All passengers who may fail to procure regular fare tickets shall be transported over all railroads in this State at the same rate and price charged for such tickets for the same service."

The opinion in the Kilpatrick case must be considered with reference to its own facts. There the one intending to be carried, without any intent to defraud or impose upon the carrier, and being ready, able and willing to pay his fare, was ejected from the train after it had been put in motion. The issue thus presented for determination was whether or not, under the facts stated, the carrier had the right to expel him from the train. The court held that it did not have that right because Kilpatrick had become a passenger within the meaning of section 6613 of Kirby's Digest. The court said:

"We are of the opinion, conceding the facts to be as appellee states them and as the jury might have found, that appellee was a passenger. In other words, one who in good faith goes to a railroad station, intending to take passage upon one of

its regular passenger trains, who is able and intends to pay his fare upon the demand of the carrier, and who enters over the steps of a passage way to a car where passengers ride, and through an entrance, unobstructed, which passengers may freely use—we say, one who embarks upon a passenger train under such circumstances is a passenger, although he may not have purchased a ticket, and may not have entered at a place where a porter or brakeman was stationed to inspect tickets, and although he may have passed over to, and may have been found standing temporarily upon, the platform of a coach in which passengers were not permitted to ride. The purchase of a ticket is not a prerequisite to the relationship of passenger and carrier under our statute."

Instead of using the languge quoted, if the court had intended the broad construction now contended for by appellees, it should have said that the word "passenger," as used in section 6613 of Kirby's Digest, meant one going to a train which carried passengers, and being able and willing to pay his fare.

Section 6613, *supra,* is part of the act regulating passenger rates; and, when construed with reference to the evident intent of the Legislature, the section may be said to have been passed for the purpose of preventing railroad companies from enforcing regulations requiring passengers to purchase tickets before entering trains by exacting a greater fare from them than from those who purchase tickets.

To sustain the contention of appellees would be to hold that section 6613 of Kirby's Digest affirmatively confers upon passengers the right to get on trains without tickets, and thereby deny to a railroad company the right to require of an intended passenger the purchase of a ticket as a condition to entering the train. We do not think such was the intention of the Legislature, or that the language used is susceptible of that interpretation, when considered with reference to the legislative intent, but are of the opinion that it only intended to prescribe the fare in case the passenger is on the train and pays the conductor. It follows that the instruction should have been given.

Other assignments of error are pressed upon us for reversal; but as they are in regard to matters that will not likely arise on a new trial, we need not consider them.

For the error in refusing to give instruction No. 2 as requested by appellant the judgment will be reversed, and the cause remanded for a new trial.

Justice BATTLE: I dissent. I think the court lays down a good rule, but the statute ought to govern.

Mr. Justice FRAUENTHAL concurs in the dissent.