ST. LOUIS SOUTHWESTERN RAILWAY COMPANY *v.* BRANCH.

## Opinion delivered January 20, 1913.

1. CARRIERS—WRONGFUL EVICTION OF PASSENGER.—Where a railway company required a passenger to show his ticket before boarding a train, and after permitting him to board the train the passenger was then ejected from the train because his ticket read over a different line of the railway company's road, the railway company will be liable for ejecting the passenger.  (Page 272.)

2. SAME—DAMAGES FOR EJECTING PASSENGER.—A passenger improperly ejected from a train may recover damages to the extent of his actual expenses incurred thereby, and humiliation being an element of damage in a suit for wrongful eviction, a verdict of $25 is not excessive.  (Page 273.)

Appeal from Pulaski Circuit Court, Second Division; *Guy Fulk,* Judge; affirmed.

*S. H. West* and *Bridges & Wooldridge,* for appellant.

1. For the appellant to have accepted appellees' tickets as valid transportation on its train from Stuttgart to England by way of Altheimer would have been a discrimination in their favor and a violation of the law. Kirby's Dig., § § 6722, 6804, 6813.

The act of appellant's agent in accepting the tickets on its train from Stuttgart to Altheimer as valid transportation was not binding on the company. The ignorance of appellees that their tickets were not valid transportation on the train from Stuttgart to Altheimer, and that of the agent in permitting them to ride on same, did not make such tickets valid for transportation from Altheimer to England, nor estop the company from refusing to accept same.  66 Ark. 571; 71 Ark. 552; 27 Ark. Law Rep. 126; 158 U. S. 98; 202 U. S. 242; Barnes, Interstate Transportation, § § 251, 252, 253; 148 Fed. 648; 163 Fed. 111.  See also 127 N. W. 543, 545; 61 Am. & Eng. R. R. Cases, 45.

2. The court erred in its charge as to the measure of damages.  Appellees, having the money with which to pay their fare, were under the duty to lessen the damages that might accrue by reason of being ejected or put off at Tucker station by paying such fare, and having refused

to do so they would be entitled to recover only the amount of fare demanded, with legal interest. 87 Ark. 162; 79 Ark. 484.

That the injured party must reasonably exert himself to prevent damage applies in cases arising in tort as well as those arising out of contract. 29 Ark. Law Rep. 437, 442.

*Jones & Danaher,* for appellee.

This action was brought to recover for a tort perpetrated upon appellees and not for violation of a contract. The Cates case, 87 Ark. 162, relied on by appellant, sustains appellee's contention. Appellees were under no duty to pay the fifty-seven cents demanded. 65 Ark. 177.

Smith, J. The complaint of each of the plaintiffs is the same, as both suits grew out of the same state of facts. They alleged that on December 7, 1911, they bought a ticket from defendant's ticket agent at Argenta for transportation as passengers on defendant's road from Argenta to DeWitt, and return, and paid the regular fare therefor. That they took passage on one of defendant's trains and went to the town of DeWitt. That on December 8, they boarded a train at Stuttgart, but before doing so they were required to and did show their tickets and were told, "You will have to change at Altheimer," but they were not told that the tickets exhibited would not be accepted for the entire passage. That they did change cars at Altheimer, and were allowed to enter the train there without objection, but after proceeding some distance on the way they were advised that they would be required to pay fifty-seven cents additional in order to ride to Argenta, and this demand was made of them, and upon their refusal to pay this sum they were ejected from the train at the station of Tucker. They further alleged that they were compelled to wait at Tucker, where there were no hotel accommodations for passengers, until the arrival of another train going back to Altheimer and from there they went to Pine Bluff, where they were forced to remain until the next morning, when they caught a train to Little Rock over the

St. Louis, Iron Mountain & Southern Railway Company's road. That they paid fare from Tucker to Pine Bluff, amounting to seventy-two cents and hotel bill, amounting to $2, and railroad fare from Pine Bluff to Little Rock amounting to $1.25. They further alleged they were ejected from the car in the presence of a number of passengers and suffered much shame and humiliation on that account. There was evidence tending to support all of these allegations.

The defendant answered and admitted the purchase of the tickets, but says that the tickets bought entitled the plaintiffs to go upon defendant's train by way of England over the Central Arkansas & Eastern Railway to Stuttgart, this last named road being a short line, operated by the defendant under a lease, and that when the ticket was sold, the agent, selling it, so stamped it, that it showed it was to be used by way of England to DeWitt and return. The defendant admitted the return part of the ticket was valid for transportation over defendant's line from DeWitt to Little Rock via England, but denied that the ticket entitled them to return over its line from Stuttgart via Altheimer. The lines of defendant's road connecting England, Stuttgart and Altheimer make an equilateral triangle and the tickets sold the plaintiffs were good only on this short line road from England to Stuttgart.

The defendant offered evidence tending to support all these allegations and in addition produced the passenger tariff on file in the office of the State Railroad Commission, which authorized the defendant to charge fifty-seven cents more for a ticket from Little Rock to Stuttgart via England and Altheimer than was charged for a ticket direct to Stuttgart via England. It appears that this short line railroad had been in operation for only a few months, and the plaintiffs were making their first trip over it, and although they admitted changing cars at England, they did so in the night time and claimed not to have understood how the trains would run on their return. It is admitted that the tickets were so stamped that their use was limited to the short line road, but the

evidence tended to show that the stamping was indistinct and the plaintiffs say that it escaped their observation and would have been meaningless had it been observed. The plaintiffs testified that their business in Little Rock was urgent and important, and that they desired to return there as soon as possible, and, to that end, drove through the country from DeWitt, to Stuttgart, DeWitt being on a branch line of defendant's road, which connects with the main line at Stuttgart. It appears that the defendant had a rule requiring prospective passengers to exhibit their tickets before entering the train and becoming passengers, and in obedience to this rule, the plaintiffs were required to exhibit their tickets, both at Stuttgart and Altheimer. They testified they were permitted to enter the train at Stuttgart, and were not advised that the tickets exhibited were not good for the entire trip, which they were about to make, nor did they know that additional fare would be demanded. It was said in the case of *St. Louis & S. F. Rd. Co.* v. *Blythe,* 94 Ark. 153, that the railroad may require passengers to purchase tickets before entering the cars and it was further said, that such rules are reasonable, because they not only facilitate the order and convenient conduct by the railroad company of its own business, but they promote the safety and comfort of its passengers. Thus it is seen that the rule is not for the exclusive benefit of the railroad company, and we are of opinion, under the facts here stated, that it was the duty of the defendant company, either to have refused them admission as passengers on the ticket presented or to have advised plaintiffs that the tickets would not be accepted for the entire trip to the destination named thereon, or, failing to do so, to have carried them to that destination without the demand of the additional fare charged, and without ejecting them for their failure to pay it. Of course, if they had been advised, when they tendered themselves as passengers, that they must either return direct through England or pay the additional fare, there would have been no cause of action for evicting them upon their refusal to pay; but they could not be required to pay this addi-

tional sum for transportation to the destination named in their tickets, when they had been received as passengers upon the presentation and examination of their tickets by the defendant's servant, who was stationed at the train for that purpose.

There was a verdict and judgment in favor of each defendant for the sum of $25, and defendant complains that this sum is excessive, for the reason that the proof affirmatively shows that both plaintiffs had the money with which they might have paid their fare upon the train and that they should have done so; and that they can not now recover a sum of money in excess of the sum demanded by the auditor upon the train. This is upon the theory that plaintiff "could not increase his damages for a breach of contract by negligence, or refusal to do that which would lessen them. By refusing to pay his fare he contributed to his injuries, which are the direct result of his own conduct and not the breach of the contract for his carriage" and in support of the contention cites the case of *St. Louis, I. M. & S. Ry. Co.* v. *Cates,* 87 Ark. 162, from which case the above quotation is taken. That case also quoted the following language with approval, from the case of *St. Louis S. W. Ry. Co.* v. *Reagan,* 79 Ark. 484: "When a party has the money with which to purchase a ticket, the natural and ordinary damages which would result from a breach of a contract to give him free transportation, would be the price of the transportation agreed to be furnished. If plaintiff in this case had the money with which to have purchased a ticket, we see no reason why he should be allowed to recover damages for failure to furnish a ticket, beyond the price of a ticket." But the Cates case was the eviction of a passenger from the train of a connecting carrier, and the Reagan case was a suit for damages for a failure to furnish free transportation to an injured employee in accordance with his contract of employment, and a distinction appears to be made between such cases and the case of an eviction of a passenger made by the contracting carrier. In the Cates case, *supra,* Justice Hart, speaking for the court, said: "If appellee had been evicted from the train of

the carrier with whom he made the contract, he would have had a right of action against it for breach of duty as a carrier, and his measure of damages, unless there was an element of malice, recklessness, or wantonness, would have included the humiliation that resulted from his expulsion from the train," and Judge RIDDICK, in the Reagan case, *supra*, used language to the same effect. As humiliation is an element of damages to be considered in a suit for wrongful eviction upon the part of the contracting carrier, and in view of the fact that plaintiffs were shown to have incurred an expense of $3.97, we can not say that the judgment is excessive, and it is accordingly affirmed.