St. Louis & San Francisco Railroad Company *v.* Dyer.

Opinion delivered November 9, 1914.

1. Railroads—passenger traffic regulations.—A railroad company has the right to require all persons to purchase tickets before becoming passengers and, as a means of enforcing this regulation, it has the right to require the exhibition of tickets before entering the train. To this end the railroad company may require passengers to enter at certain doors provided sufficient facilities are afforded, and may close other doors to prevent entrance therein of passengers.

2. Railroads—duty to passengers—injury to passenger.—When a carrier of pasengers has exercised the highest degree of care to render its service to its passengers safe, its duty has been discharged and it is not then liable for an injury to a passenger, however free that passenger may be from any negligence contributing to his injury.

3. Railroads—duty to passengers—injury to passenger.—A railroad company, in discharging its highest duty of care to its passengers, is only required to anticipate what is likely to be done by some passenger under the circumstances then existing, and this duty to take precautions to preserve the safety of the passenger increases as the probability of injury to the passenger increases, and is always to be proportioned to the probability of injury to the passenger.

4.   RAILROADS—INJURY TO PASSENGER—DUTY OF CARE—OPEN TRAP DOOR.—
     Plaintiff, a passenger, entered defendant's train at the front end
     of a coach and walked through the rear coach to the back plat-
     form, before the train started. The coach was a vestibuled coach,
     and the trap door on the rear platform was left open for use of
     the flagman, and was not intended for the use of passengers.
     Plaintiff fell through the trap and was injured. *Held*, there being
     no probability of the plaintiff's being injured in the manner in
     which he was injured that the railroad company was under
     no duty to anticipate the same, and was not liable for the injury
     resulting.

5.   RAILROADS—PASSENGERS—DUTY OF CARE.—A railroad company is re-
     quired to guard against only those things, which in the exercise
     of the highest degree of care, it should anticipate would probably
     be dangerous to some passenger.

Appeal from Sebastian Circuit Court, Greenwood
District; *Daniel Hon,* Judge; reversed.

STATEMENT BY THE COURT.

Appellee sued to recover damages for injuries sus-
tained by him while a passenger on one of appellant's
trains, and the evidence which he offered in support of his
suit was substantially as follows:   Appellee testified that
he was twenty-three years old, and was returning from a
picnic which had been given at Hartford on the 1st day
of September, 1913, and that he came from Hartford on
the Rock Island train and changed cars at Mansfield.
That he and two friends got on the train at Mansfield
and sat down in some seats near the center of the car,
but that they soon got up and walked back to the rear end
of the car.   That the car was vestibuled, but that, while
the door was closed, the trap over the steps was open and
that, as he walked out on the platform of this car, he
stepped to one side, without observing that the trap was
up, and fell through that space, and, as he did so, he
threw his hand through the glass door and sustained a
rather painful injury.   Paul Cobb, who was one of his
companions, testified that they got on the train between
the rear and the next to the rear coach and that, after
going into the rear coach, they decided they would go into
the smoker, and they turned to enter that car, but found

people getting on the train from Hartford. They decided that they would go to the rear of the train and get off the back end of the coach, and they walked back there for that purpose. That a Mr. Burns, who was the third member of the party, led the way, and was followed by Mr. Dyer, and witness followed behind. That Dyer started down the steps, and the trap door was up and the vestibuled door closed, but that there was no light at the end of the car to disclose that condition, and that in some way Dyer stumbled into this opening and threw out his hand and struck the door. That when he heard the glass break he (witness) said, "We had better get away from here right now, or the railway company is liable to have us arrested," when Dyer said, "I cut my hand badly," and he accompanied him to a physician, where the wound was dressed. That the train was due to depart at 8:06 p. m., and the injury occurred a few minutes before that time. Burns testified that he and his two companions got to the depot a short time before the train started, and they got on the train to go to Arkoal. That they went into the train and sat down, and were watching for the arrival of a train coming from the east known as the short train, and that after waiting some time they decided they would walk to the rear end of the train to see who got off this short train, and that this trap door was up and the door of the car closed, and there was no light there except a red lantern at the rear end of the coach, which did not light up the space covered by this trap door, and that appellee walked straight out to the rear end of the car and stepped to the right, and fell, and in throwing out his arm sustained the injury for which he sues.

The conductor in charge of the train testified on behalf of appellant substantially as follows: That this train ran from Mansfield to Fort Smith, and that the railroad company had in force a regulation requiring all passengers to exhibit their tickets before entering the train, and that passengers were being received at the front end of the rear car and at the rear end of the car next ahead of the rear car, at both of which entrances employees of

the railroad company were stationed for the purpose of requiring the exhibition of tickets, and that all other doors in the train were closed so that passengers might not enter the train without exhibiting their tickets, and that this was a necessary thing to do to prevent passengers entering the train who had no tickets. The conductor explained that at Mansfield it was his custom to leave the trap up at the end of the rear car and that this was done in order that the porter might enter the train after it had left the station. That in leaving Mansfield the train had to back up the track until they struck the main line toward Fort Smith, and that in doing this the porter went along by the side of the train for the purpose of flagging it out of the station, and the trap was raised inside the door so that the porter might enter the train without having to go up to the front end of the train when it had reached the main line. The proof does not show just what this distance was, but it does show without dispute that no one was supposed to enter the train or leave it through the door where appellee was hurt while the train was standing at that station. The injury occurred and appellee left the train in company with his companions before the train left the station, and no member of the train crew appears to have known anything about the injury for some time thereafter.

The red lantern, which the proof shows to have been sitting on the rear end of the train, was placed there for the protection of the train and because the regulations of the company required it and for the use of the porter in flagging the train out of the station.

Appellee recovered judgment for a substantial sum, and this appeal has been duly prosecuted.

*W. F. Evans, J. B. McDonough* and *B. R. Davidson,* for appellant.

1. The regulation as to purchase of tickets before entering a train, and showing them at proper doors or entries, was reasonable. 94 Ark. 153. Leaving the ves-

tibule of a standing train open is not negligence.   81 Ark. 405; 27 L. R. A. (N. S.) 253; 51 So. 616; 87 Ark. 335.

2.   Plaintiff assumed the risk.   14 Allen (Mass.) 433; 149 Mass. 204.  A passenger's place is inside, not outside, the coach.   29 Ind. 82-85.

3.   He was guilty of contributory negligence.   40 Ark. 298-322; 46 *Id.* 528-533; 24 Atl. 816.   There was no presumption of negligence.   70 Ark. 481.

*John W. Goolsby,* for appellee.

1.   The leaving of trap open was negligence.   92 Ark. 432; 76 Fed. 735.   The cases 81 Ark. 405, 27 L. R. A. (N. S.) 253, and 87 Ark. 335, are not applicable.

2.   Appellee did not assume the risk caused by the negligence of the company, of which he had no knowledge. 93 Ark. 240.

SMITH, J., (after stating the facts).   (1)   A railroad company has the right to require all persons to purchase tickets before becoming passengers, and, as a means of enforcing this regulation, it has the right to require the exhibition of this ticket before entering the train.   *St. Louis & S. F. Rd. Co.* v. *Blythe,* 94 Ark. 153; *St. Louis S. W. Ry. Co.* v. *Hammett,* 98 Ark. 418, and *St. Louis S. W. Ry. Co.* v. *Branch,* 106 Ark. 272.   To this end the railroad company may require passengers to enter at certain doors, provided sufficient facilities are afforded, and may close other doors to prevent entrance therein of passengers.   Here the railroad company had two doors open, and all the others closed.   All these other doors were closed to compel passengers to enter at the doors where members of the train crew were stationed to examine tickets as passengers entered the cars. Appellee had entered this car with his companions, as all other passengers had been required to do, and was injured before the departure of the train in the manner stated.

The case of *St. Louis, I. M. & S. Ry. Co.* v. *Oliver,* 92 Ark. 432, discusses the right of railroads to provide vestibuled cars and the care which must be exercised when

they have been provided. The facts in that case were
that Oliver, the passenger, secured passage on one of
defendant's trains from Malvern to Benton, and, while
passing out of the chair car, in which he had been riding,
to the smoker ahead, he fell in the open trap door in the
vestibule between the cars, his evidence being that, as he
passed out of the chair car on the platform between the
cars, he met a gentleman starting to go into the chair
car, and he stepped slightly to the side to permit this
party to pass, and fell down the steps in the vestibule.
The trap door was not down over the steps, and it was
dark in the passageway between the cars and in the ves-
tibule. The rules and custom of the railway company re-
quired that, when such a vestibuled passenger train left a
station, the servants of the company should close the ves-
tibuled doors and close down the trap doors over the
steps, and, while the servants of the company testified
that they had performed that duty, the court held that
there was sufficient evidence to support a finding that
they had not done so. In that case it was said:

"A common carrier of passengers is not under any
legal obligation to provide upon its line of railroad ves-
tibuled trains, although such trains are apparently safer
than the others, and have come to be in general use.
But when the carrier has provided vestibuled trains, it
is his duty to maintain them in a safe condition. It then
becomes the positive duty of the carrier in the operation
of such trains to use the highest degree of care consist-
ent with the practical operation and management thereof
to see that every appliance connected therewith is kept
in repair and in safe condition. The passenger has the
right to assume that the vestibules provided are care-
fully managed, and that they are convenient and safe.
The principles generally recognized as fundamental in
the law of carriers of passengers are applicable to these
new appliances." (Citing cases.)

"The degree of care that is required of the carrier
in furnishing sound and safe appliances in its vestibuled
trains and seeing to it that those appliances are kept at

all times safe and sound while its trains are carrying passengers is not one of ordinary care, but the carrier 'is bound to the utmost diligence which human skill and foresight can effect; and if injury occurs by reason of the slightest omission in regard to the highest perfection of all the appliances of transportation, or the mode of management at the time the damage occurs, the carrier is responsible.'" *George* v. *St. Louis, I. M. & S. Ry. Co.,* 34 Ark. 613.

"One of the chief objects of a vestibuled train is to furnish to the passenger a safe and convenient way of passage from one car to another; and in order for such passage way to be safe, ordinary prudence demands that the trap doors should be over the steps. It was not only the duty of the servants of the defendant in this case to close these trap doors, but it was their further duty to exercise the highest care to see that they were kept in this condition. In the case of *Wagoner* v. *Wabash R. Co.,* 94 S. W. 295, the majority of the court say: 'It is the opinion of the court that the railroad company is not only answerable for the negligent acts of its servants in opening the vestibule doors and permitting the same to remain after having been opened by them, but it is responsible as well for its failure to exercise a high degree of care, to the end that the same are closed and the vestibule reasonably safe for use, even though they are opened by others than the defendant's servants. In this case it became a question for the jury to determine whether, under the circumstances, the defendant exercised that high degree of care and vigilance in closing and keeping closed the trap door over the steps. And there was some evidence to warrant the finding that such high degree of vigilance and care was not exercised by the servants of the defendant in charge of the train."

Another statement of the duty of the carrier is found in the case of *Chicago, R. I. & P. Ry. Co.* v. *Simpson,* 87 Ark. 335, where it was said:

"As is said in *Wagoner* v. *Wabash R. Co.,* 94 S. W. 293, 'the purpose of the vestibuled cars is to add to the

comfort, convenience and safety of passengers, more particularly while passing from one car to another." While railway companies are not bound to provide vestibuled coaches on their passenger trains, yet, where they have done so, passengers will have the right to assume that they are convenient and safe for the purpose intended, and that they will be prudently managed. Any negligence upon the part of railway companies in these particulars resulting in injury to their passengers will render them liable in damages. 2 Hutchinson, Carriers, § 927."

In both the Oliver and the Simpson cases, *supra*, the passengers were injured while the train was in motion, and these cases, as well as the cases therein cited, should be read in the light of the facts to which the principles there announced were applied. It is not always negligence for the carrier to fail to close the trap over the steps, or to keep open or to keep closed the train doors. The Oliver case, *supra*, contains a quotation from the case of *Pennsylvania Company* v. *Roy*, 102 U. S. 451, where the duty of the carrier to the passenger was defined, in which Mr. Justice Harlan, speaking for the court, said:

" 'He is responsible for injuries received by passengers in the course of their transportation which might have been avoided or guarded against by the exercise upon his part of extraordinary vigilance aided by the highest skill. And this caution and vigilance must necessarily be extended to all the agencies or means employed by the carrier in the transportation of the passenger. Among the duties resting upon him is the important one of providing cars or vehicles adequate, that is, sufficiently secure as to strength and other requisites for the safe convenience of passengers. That duty the law enforces with great strictness. For the slightest negligence or fault in this regard, from which injury results to the passenger, the carrier is liable in damages.' "

(2-3) But the duty thus imposed does not require the railroad company to render it impossible for a pas-

senger to injure himself. When the carrier has exercised the highest degree of care to render its service safe, its duty has been discharged, and it is not then liable for an injury to a passenger, however free that passenger may be from any negligence contributing to his injury. In discharging this high duty of care to its passengers, the railroad company is only required to anticipate what is likely to be done by some passengers under the circumstances then existing, and this duty to take precautions to preserve the safety of the passengers increases as the probability of injury to the passenger increases, and is always to be proportioned to the probability of injury to the passenger. The Simpson case, *supra,* affords a fair illustration of this duty. There a boy about seventeen years old was riding on the platform of the back coach of the train, and fell from this platform and was seriously injured. The coach was provided with a vestibule, but the door and vestibuled platform or floor was left open while the train was at the station from which it departed, and continued open until the accident occurred. When the train had gone about sixteen miles, the boy fell through the opening and was injured, and in holding that the railway company was guilty of no negligence, it was there said:

"The uncontroverted proof in this case shows that appellant was guiltless of any negligence in the management of its vestibule appliances that resulted in injury to young Simpson. The vestibule in question, being at the rear end of the rear coach, could not be used for crossing from one car to another. There was therefore no duty upon the part of the appellant to have the rear end of the last coach in the train vestibuled in order that passengers might pass from car to car in safety. Appellant had not led young Simpson to believe that a vestibuled platform could be used to ride on for observation, conversation or other purposes. See *Crandall* v. *Minneapolis, St. Paul & S. S. & M. Ry. Co.,* 105 N. W. Rep. 185. Appellant was under no duty to provide a vestibule for such purposes, and was therefore not liable for its failure

to do so." Having found that the railway company was guilty of no negligence, the court did not consider or decide the question of the contributory negligence of the boy, which was raised in that case.

(4) Applying these principles to the case at bar, we have concluded that the railway company was guilty of no negligence which would support a verdict for damages against it, and this is true because, in our opinion, under the circumstances of this case, appellant was under no duty of anticipating the probability of appellee being injured in the manner in which he was injured. This was not a train which had just arrived at a station where passengers were likely to leave from either end of the car in which they were riding, but appellee and all other passengers had just entered this train, and all of them knew that the ticket rule was being enforced, for all of them had been compelled to exhibit their tickets before entering the train; consequently, they knew the places of exit were the places of entrance.

The proof upon the part of appellant was that the trap was left up in order that the porter might flag the train out of the station until it backed down to the main line which led to Fort Smith and that, after having done this, he could enter the train without having it wait until he went to the front end of it and was admitted, and that thereafter both the trap and the door would be kept closed.

(5) The principle which is controlling here, is that the railroad company is required to guard against only those things which, in the exercise of the highest degree of care, it should anticipate would probably be dangerous to some passenger. And under the facts here stated, we think the appellant was not making a negligent use of this rear vestibule trap and door and, consequently, is not liable for appellee's injury. The judgment is, therefore, reversed and the cause dismissed.

KIRBY, J., dissents.