AMYOT v. DULUTH, SOUTH SHORE & ATLANTIC RAIL-
WAY CO.

RAILROADS — NEGLIGENCE — CONTRIBUTORY NEGLIGENCE — DIRECTED
VERDICT.

> Where the vestibule of a passenger · coach on a dock was
> left open in preparation to being placed on a ferry, as
> required by Federal regulation, a passenger who fell and
> was injured by reason thereof is *held*, by an equally
> divided court, guilty of contributory negligence as matter
> of law, notwithstanding earlier in her journey she had
> been told by trainmen that it would be safe for her to
> go into the vestibule when the train was running, as it
> would be open only when the train was at stations, and
> she was not warned that it would be opened when the
> train reached the dock.

Error to Wayne; Brown (William B.), J., presid-
ing.     Submitted January 27, 1927.     (Docket No.
39.)     Decided June 6, 1927.

Case by Leonthine Amyot against the Duluth, South
Shore & Atlantic Railway Company for personal in-
juries.     Judgment for defendant on a directed verdict.
Plaintiff brings error.     Affirmed by an equally divided
court.

*O'Brien & Travis*, for appellant.

*J. Walter Dohany* and *Ralph R. Eldredge* (*A. E.
Miller*, of counsel), for appellee.

CLARK, J.     Plaintiff having a ticket to Detroit and
being accompanied by her three children boarded de-
fendant's vestibuled train at Houghton.     The train
stopped at a number of stations between Houghton and

Railroads, 33 Cyc. p. 905; 2 L. R. A. (N. S.) 644; 22 L. R. A.
(N. S.) 313; 27 L. R. A. (N. S.) 253; 4 R. C. L. 1216; 1 R. C. L.
Supp. 1295; 5 R. C. L. Supp. 270; 6 R. C. L. 288.

the ferry dock at St. Ignace.    She observed that at station stops vestibule doors were opened and platforms raised.    The platforms were down and the doors closed while the train was in motion.    She observed, too, that the vestibule doors were open once when there was an accident between stations.    A number of times while the train was in motion she had gone with her children into the vestibule on the rear of the coach in which she rode, and had ridden there, remained there for a time.    The brakeman said she might do that.    We quote from her testimony:

"I talked to the brakeman, at times in the afternoon and different times when he passed.    I asked him if it was all right to be out in the vestibule with my children.    He told me 'yes.'    He told me to go out there, to be there and that there was no objection. * * *
"My three children were with me again when I talked to the conductor about the back vestibule.    Between 3 and 4 in the afternoon he told the children that they were safe, because the platforms were open simply at the station."

The train stopped at St. Ignace station.    Then it moved to the ferry dock, a distance of about 400 feet, during which movement the vestibules were closed. She knew that a short distance from St. Ignace station the coaches were to be placed on a ferry and taken to Mackinaw City.    She knew they were at the ferry dock.    She knew that the next car back of the one in which she rode was a dining car.    Soon after the train stopped at the dock she went into the vestibule. It was about 9:30 p. m. and dark.    The car was lighted.    The vestibule was then closed.    She "did not really see the glass" of the vestibule door, but she said "I knew it was glass, because we were not at a station; that was the only place they were supposed to be open."    She testified:

"The door was open from the car and the inside of the car was lighted, some might shine out on the platform.    I did not really see the light.    It did not shine out; it was not enough; the lights were not all lit."

The dining car was still attached.    She returned to her seat in the coach.    A little later she again went into the vestibule.    The dining car had then been removed, but there is testimony that plaintiff did not know it.    She testified that she did not know then that "they were getting ready to put the train on the boat."    She did not observe that the vestibule was then open.    She fell from the steps of the car and was injured.    She testified:

"When I got to the door I did not have time to look in any direction.    I took just two short steps before I fell.    I was facing the back of the coach.    My eyes were open.    I did not look either to the right or left before the accident.    I did not see anything.    I did not turn my head.    When I got to the door I stepped over the threshold one step and the second I went on to the steps.    I did not look at the floor of the car.    I was sure the door was closed because it was when I went out there 15 minutes before the accident."

It was necessary to open the vestibule to disconnect the cars.    It was necessary to disconnect the cars to load them on the boat.    A rule prescribed by virtue of a Federal statute and here applicable was:

"It shall be the duty of the master of any such car-ferry steamer to see that all of the doors of the cars are unlocked, and that the vestibules of the cars are open while the cars are on the steamer to allow the persons so carried free egress at all times."

At the conclusion of plaintiff's case and on motion of defendant, a verdict was directed on the grounds that no actionable negligence was shown and that in

any event plaintiff was guilty of contributory negligence as a matter of law.

Generally the purpose of vestibules is that those on board train may pass safely from one car to another. The carrier having provided vestibuled coaches is bound to make them safe for travel. A passenger may assume that they are safe and that they will be prudently managed. 2 N. C. C. A. 688, note. When the train is stopped at a station to take or discharge passengers or at other points where trainmen are required to get on or off the train, it may not be said, except in special circumstances, that the vestibules should be closed. In *Clanton* v. *Railway · Co.*, 165 Ala. 485 (51 South. 616, 27 L. R. A. [N. S.] 253), it was held:

"Modern vestibuled trains are so constructed as to make it convenient and invite passage from car to car. To minimize the danger, a lid or drop door is provided, which is let down over the steps when the train is in motion, thus in effect extending the platform to the side of the car. The nature of the contrivance is such that it obstructs all passage between the car and the ground when left down. The necessary result is that while the train is standing at a station to take on or discharge passengers, during which time employees engaged in operating the train and providing for its safety pass on and off, no rule of prudence, in the absence of special circumstances, requires that the lid, or drop door, or extension platform, be kept down."

In the case at bar it was necessary that the vestibules be open to permit trainmen to enter and to leave the cars and that the cars might be disconnected, and it was required by law that the vestibules be open when the cars were on the ferry, still there are special circumstances here to take the case out of what otherwise might be controlling rules, and the circumstances are: the permission of the trainmen given to plaintiff that she might ride and be in the vestibule; the assur-

ance that the vestibule would be opened only at stations; that she did what she was expressly permitted to do; that she relied on the assurance; and that without warning plaintiff the vestibule was opened at a place not a station.   This was evidence of negligence.   In *Crandall* v. *Railway Co.*, 96 Minn. 434 (105 N. W. 185, 2 L. R. A. [N. S.] 645, 113 Am. St. Rep. 653), it was said:

"The defendant was not bound to have the car vestibuled; but having done so, it could not by acts and words lead its passengers to believe that the doors of the vestibule would be kept closed between stations, and then negligently leave them open, without incurring liability to passengers injured thereby."

In *Chicago, etc., R. Co.* v. *Simpson*, 87 Ark. 335 (112 S. W. 875), a boy was riding the rear platform of the last coach and fell therefrom, the vestibule being open, and was injured.   The court held that there was no duty upon the carrier to have the rear end of such coach vestibuled, and held that the carrier was not negligent but in so doing the court said:

"Appellant had not led young Simpson to believe that a vestibuled platform could be used to ride on for observation, conversation or other purposes."

And see *St. Louis, etc., R. Co.* v. *Dyer*, 115 Ark. 262 (170 S. W. 1013), and notes 13 N. C. C. A. 764 and 20 N. C. C. A. 795.

As it appears from plaintiff's testimony that her conduct of the moment preceding the accident was influenced by the assurance that the vestibule would not be open except at stations and by her reliance on that assurance it cannot be said on the facts of this case that she was guilty of contributory negligence as a matter of law.

Both of said questions on which verdict was directed were for the jury.

Judgment should be reversed, with costs to plaintiff. New trial should be granted.

SHARPE, C. J., and BIRD and McDONALD, JJ., concurred with CLARK, J.

WIEST, J.     I think the judgment should be affirmed. Plaintiff knew the train was to take the ferry at St. Ignace, and that such station had been reached and the train was at the ferry dock.     On the ferry a Federal regulation required the car doors to be unlocked and the vestibules open.     At the dock, or stop at St. Ignace, the train had to be cut to take the ferry.     The advice of the brakeman was of conditions between stations, constituted no more than the law exacts, and did not apply at the time of the accident, because the train was not then between stations but at a station to take the ferry.     The declaration did not count on any assurance given plaintiff by the train crew.     Plaintiff was careless in assuming that the train at the dock to take the ferry would have closed vestibules the same as between stations.     I find no negligence on the part of defendant but only acts essential in railroad operations at a dock preliminary to taking the ferry.

The judgment is affirmed.

SNOW, STEERE, and FELLOWS, JJ., concurred with WIEST, J.